FILED
2014 MAR -7 PM 1: 13
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ———

1  John E. Mason, Jr. (SBN 51116)
   Scott N. Weston (SBN 130357)
2  Jonathan B. Altschul (SBN 234244)
   Patrick J. Hagan (SBN 266237)
3  FOX ROTHSCHILD LLP
   1800 Century Park East, 3rd Floor
4  Los Angeles, California 90067-3005
   Tel 310.598.4150 / Fax 310.556.9828
5  jmason@foxrothschild.com
   sweston@foxrothschild.com
6  jaltschul@foxrothschild.com
   phagan@foxrothschild.com
7
   Neal S. Cohen (*pro hac vice* application to be filed)
8  FOX ROTHSCHILD LLP
   1225 17th St., Suite 2200
9  Denver, Colorado 80202
   Tel 303.292.1200 / Fax 303.292.1300
10 ncohen@foxrothschild.com

11 Attorneys for Plaintiff
   WILLIAM ROBINSON, JR.
12

13           UNITED STATES DISTRICT COURT

14           CENTRAL DISTRICT OF CALIFORNIA

15                                        CV14-1701 JAK (FFMx)

| | |
|---|---|
| WILLIAM ROBINSON, JR., an individual, | CASE NO. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF** |
| vs. | |
| CLAUDETTE ROGERS ROBINSON, an individual, | |
| Defendant. | |

**COMPLAINT**

Plaintiff William Robinson, Jr. ("Plaintiff") hereby alleges as follows:

## SUMMARY OF ACTION

1. This is a civil action for declaratory relief arising from adverse and erroneous claims by Plaintiff's ex-wife, Defendant Claudette Rogers Robinson ("Defendant"), of ownership in certain copyrights to musical compositions prospectively belonging to Plaintiff alone pursuant to the 1976 Copyright Act, specifically 17 U.S.C. sections 304 and 203.

2. Defendant did not write any part of the musical compositions at issue. Plaintiff wrote them during the parties' marriage, which ended in 1986. As each composition was completed, Plaintiff immediately assigned the original copyright in it to a music publisher.

3. As the sole author of the musical compositions at issue, Plaintiff has the exclusive right, but not the obligation, to terminate his assignments of the copyrights after a certain number of years. Plaintiff has properly issued termination notices for all currently-eligible copyrights through December 31, 2013, and may continue to do so for the remaining copyrights.

4. Defendant claims that the copyrights Plaintiff has recaptured and may continue to recapture upon termination of the assignments to the music publisher belong in part to her pursuant to California community property law. However, the 1976 Copyright Act expressly provides that these "recaptured" copyrights belong to the author alone, which is Plaintiff. Moreover, the 1976 Copyright Act precludes any transfer of those copyrights before the terminations themselves are effective. Thus, any transfer of such rights to any third party, whether Defendant or a music publisher, was barred by the 1976 Copyright Act, and is therefore null and void.

5. Plaintiff seeks a judicial declaration confirming his exclusive ownership of all copyrights, interests therein, and income therefrom ("Termination Rights") arising from his termination and recapture of his copyright assignments.

- 1 -
**COMPLAINT**

## PARTIES

6. Plaintiff is an individual residing in the City and County of Los Angeles, California.

7. On information and belief, Defendant is an individual residing in the County of Los Angeles and the City of Beverly Hills, California.

## JURISDICTION AND VENUE

8. This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1338(a), as well as 28 U.S.C. 1331 and 2201, as well as the Copyright Act of 1976, 17 U.S.C. sections 101 *et seq.* Venue is proper in this Court pursuant to 28 U.S.C. section 1391, subsections (b)(1), (b)(2), and (c)(1) because, on information and belief, Defendant resides, is domiciled, and took adverse action in this judicial district.

## FACTUAL BACKGROUND

9. Plaintiff is a living recording artist and songwriter.

10. During the course of his songwriting career, in accordance with a series of single-song agreements and/or an exclusive songwriter's agreement, Plaintiff assigned the copyrights in each of his musical compositions as he created them to Jobete Music Co., Inc. ("Jobete").

11. On November 7, 1959, Plaintiff married Defendant. The couple lived in Detroit and had two children together. In 1972, they moved to Los Angeles.

12. Plaintiff and Defendant separated on or about May 30, 1985. They divorced in California in 1986. As a result of the divorce, all copyrights, contract, and/or royalty rights to the musical compositions created between November 7, 1959 and May 30, 1985 were purportedly divided between Plaintiff and Defendant as tenants-in-common. Defendant also received a monthly spousal support payment of substantial sums and significant real and personal property.

13. Defendant did not write any part of any of the musical compositions at issue; her interest was awarded on the basis of community property principles

alone.

14. In 2002, Plaintiff married his current wife, Frances. They currently reside in Los Angeles.

15. Beginning in or around 2012, more than 25 years after Plaintiff and Defendant separated, Plaintiff began issuing notices of termination of copyright assignment to Jobete pursuant to Section 304(c) of the 1976 Copyright Act. The limited right to transfer his "recaptured" copyrights to the original assignee arose immediately. The first termination is effective this year; subsequent terminations continue to take effect on an ongoing basis. Plaintiff has not yet reassigned any of the copyrights "recaptured" by him pursuant to Section 304 or Section 203, but he is actively negotiating for the sale of those rights.

16. Aware of Plaintiff's search for a new buyer/administrator for his "recaptured" copyrights, Defendant sent SESAC, Inc. ("SESAC"), a performing rights organization based in Nashville, a letter purporting to provide notice of Defendant's alleged interests in Plaintiff's "recaptured" copyrights. In this written notice, a true and correct copy of which is attached hereto as **Exhibit A**, Defendant stated in pertinent part as follows:

> The Further Judgment clearly requires that Smokey execute copyright assignments in favor of Ms. Robinson, and he has failed to do so. Nonetheless, under the Decree, Ms. Robinson is legally entitled to directly receive payment of her half of all receipts from these songs. ASCAP and other third parties have been paying Ms. Robinson directly. Accordingly, in the event that SESAC and Smokey are exploring a new business relationship, Ms. Robinson would be interested in exploring a move of her half of the [musical compositions] to SESAC, should Smokey decide to move his half and if the deal were acceptable to her. Ms. Robinson is entitled to 50% of any moneys hereafter payable on the CMCs. Similarly, Ms. Robinson would be entitled to 50% of any advance, unless that advance is recoupable only from Smokey's 50% interest in the songs and not recoupable against Ms. Robinson's half.

17. Furthermore, in an email from Defendant's counsel to Plaintiff's counsel dated December 6, 2013, Defendant's counsel stated in pertinent part the

following:

> [O]nce title reverts to [Plaintiff] we will want to have assignments executed for filing with the copyright office so that the official records accurately reflect that [Defendant] owns 50% of the copyright.

A true and correct copy of the email is attached hereto as **Exhibit B**.

18. Defendant's notice and statements therein are incorrect and prejudicial to Plaintiff because Defendant has no interest in any copyrighted musical composition authored by Plaintiff the assignment of which was terminated pursuant to Section 304 or Section 203. Defendant's notice could jeopardize Plaintiff's ability to secure agreements for his currently-vested termination rights and/or prospectively "recaptured" copyrights, and compels him to seek declaratory relief by filing this action.

## CAUSE OF ACTION
## FOR DECLARATORY RELIEF [28 U.S.C. §§ 2201-2202]

19. Plaintiff realleges and incorporates herein by reference the preceding paragraphs.

20. There is an actual and justiciable controversy between Plaintiff and Defendant in that Defendant claims interests in copyrights which, following the termination of their assignment to Jobete, belong or will belong exclusively to Plaintiff pursuant to the 1976 Copyright Act.

21. Plaintiff's exclusive right in the "recaptured" copyrights arises from 17. U.S.C. §§ 203 and 304, which are part of the 1976 Copyright Act. These sections, particularly § 203, were enacted to replace the prior "renewal" mechanism in the 1909 Copyright Act.

22. The renewal right in the 1909 Copyright Act was alienable by contract before it was recaptured. Accordingly, an author could transfer the renewal term along with the initial term, thereby depriving him or her of any ability to negotiate the sale of the renewal term after the composition had achieved market success.

23. In part to address that problem, Congress enacted in the 1976 Copyright Act a termination mechanism which allowed an author to terminate a copyright assignment after a certain period of time, thereby permitting the author to "recapture" his or her rights after the value of the copyright has increased through market recognition. *See* 17 U.S.C. § 203.

24. For pre-1978 copyright assignments, § 304 permits an author to terminate an assignment 56 years from the date the copyright was secured. 17 U.S.C. § 304(c). The right to terminate a copyright assignment under § 304, and the extended term of protection for that copyright, represents "a completely new property right" created by Congress. For post-1978 copyrights, § 203 permits an author to terminate an assignment 35 years after the date of the assignment. *See* 17 U.S.C. § 203(a).

25. The copyright assignment must be terminated in a 5-year "termination window" which runs from the 56th to the 61st year after the date the copyright was secured. 17 U.S.C. §§ 203(b)(3); 304(c)(3). To effect a termination, the author must serve a notice on the copyright assignee. 17 U.S.C. §§ 203(a)(4), 304(c)(4). The notice must precede the actual termination date by at least 2 years, but it may not be sent more than 10 years in advance. *Id.* The termination right vests when the notice is sent. 17 U.S.C. § 203(b(2), (304(c)(6)(B).

26. Sections 203 and 304 expressly provide that the parties with the right to terminate – and only those parties – hold the rights in the copyright whose assignment was terminated. 17 U.S.C. §§ 203(b)(2), 304(c)(6). Thus, title in any copyright terminated by Plaintiff vests exclusively in Plaintiff.

27. To prevent the problem of authors selling their renewal term with the initial term of copyright, Congress expressly provided that: "Termination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant." 17 U.S.C. §§ 203(a)(5); 304(c)(5). Thus, the author's right to terminate is nontransferable – including by

agreement or will – until the notice is sent to the assignee. *See id.* Even then, it is only transferable to the original assignee until the actual date of termination. 17 U.S.C. §§ 203(b)(3); 304(b)(6)(D).

28. Accordingly, Plaintiff could not have transferred his "recaptured" copyrights to Defendant until after those copyrights were in fact "recaptured," which will not be until 2015 for the songs written in 1959, the first year of Plaintiff's and Defendant's marriage. Accordingly, Plaintiff could not have agreed, and in fact did not agree, to transfer those rights during his marriage or upon its dissolution.

29. Additionally, a copyright "recaptured" pursuant to § 304(c) constitutes an entirely different right which is separate from the grant of the original copyright. If such a copyright is "recaptured" after the dissolution of the author's marriage, it necessarily constitutes new property which did not exist during the marriage, and which could not have been distributed to the community upon divorce. Moreover, only the author has the right to terminate an assignment of his or her copyright, unless he or she is deceased, in which case the author's surviving spouse (*i.e.*, the author's spouse at the time of the author's death) may exercise that right along with the author's offspring. 17 U.S.C. §§ 203(a)(2); 304(c)(1), (2). Thus, the author's spouse does not have any right, even in part, to terminate an assignment of copyright before the author's death.

30. Therefore, when Plaintiff recaptures his copyrights they will be new copyright interests, and they do not arise until 2015 at the earliest, 30 years after the end of the marriage between Plaintiff and Defendant.

31. In light of Defendant's notice to SESAC, there is currently an actual dispute between Plaintiff and Defendant as to the disposition of the rights to, interests in, and income from the extended terms of copyright protection procured by Plaintiff pursuant to sections 203 and 304 of the 1976 Copyright Act. In the absence of a judicial declaration of title, Plaintiff will be, and is now, unable to

effectively negotiate the sale of his currently-vested termination rights and/or prospectively "recaptured" copyrights. Such a declaration is necessary and appropriate at this time so that Plaintiff may ascertain his rights in advance of any assignment.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

1. That this Court declare that Plaintiff's termination rights and copyrights arising thereafter pursuant to sections 203 and 304 of the 1976 Copyright Act constitute his separate property;

2. That this Court declare that Defendant shall take no right to, interest in, or income from any copyright "recaptured" by Plaintiff pursuant his terminations of copyright assignment in accordance with sections 203 and 304 of the 1976 Copyright Act;

3. Costs and disbursements; and

4. Such other relief as the Court finds just and proper.

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated: March 7, 2014

FOX ROTHSCHILD LLP

By: _____
John E. Mason, Jr.
Scott N. Weston
Jonathan B. Altschul
Patrick J. Hagan
Attorneys for Plaintiff

# EXHIBIT A

# Gladstone Michel
# Weisberg Willner & Sloane ALC

4551 Glencoe Avenue
Suite 300
Marina del Rey, CA 90292-7925

tel (310) 821-9000
fax (310) 775-8775

December 2, 2013

www.GladstoneMichel.com

Reid Alan Waltz, Esq.
Associate Staff Counsel
SESAC, Inc.
55 Music Square East
Nashville, TN 37203
Email: rwaltz@sesac.com

Dennis Lord,
Executive Vice President
SESAC, Inc.
55 Music Square East
Nashville, TN 37203
email: dlord@SESAC.com

Re: **Robinson / Community Musical Compositions**
Our File No.: 57193

Dear Reid and Dennis:

Our firm represents Claudette Robinson, the former wife of William Robinson, Jr. a.k.a. "Smokey" Robinson. By virtue of the terms of the dissolution of Claudette and Smokey Robinson, and a Judgment entered in 1989 that sets forth the court's decision with respect to four hundred and eighty-three "Community Musical Compositions," as defined therein ("CMCs"), Claudette Robinson owns an undivided fifty percent in those songs, including contract rights and/or royalty rights. A list is attached hereto of the CMCs.

Smokey has long been associated with ASCAP, but it recently came to our attention that Smokey's representatives may be shopping for a new performing rights organization for him. In the event that he is courting SESAC, or the other way around, we want to put SESAC on notice that Ms. Robinson is entitled to certain rights, including the right to be paid directly, with respect to the above-mentioned CMCs.

Reid Alan Waltz, Esq.
SESAC, Inc.
Dennis Lord,
December 2, 2013
Page 2

Ms. Robinson is entitled to fifty percent (50%) of all income from those CMCs. The Further Judgment states that Smokey has the exclusive right to administer and exploit these CMCs, but also has fiduciary obligations to Ms. Robinson to keep her informed with respect to his administration and exploitation of the CMCs.

The Further Judgment clearly requires that Smokey execute copyright assignments in favor of Ms. Robinson, and he has failed to do so. Nonetheless, under the Decree, Ms. Robinson is legally entitled to directly receive payment of her half of all receipts from these songs. ASCAP and other third parties have been paying Ms. Robinson directly. Accordingly, in the event that SESAC and Smokey are exploring a new business relationship, Ms. Robinson would be interested in exploring a move of her half of the CMCs to SESAC, should Smokey decide to move his half and if the deal were acceptable to her. Ms. Robinson is entitled to 50% of any moneys hereafter payable on the CMCs. Similarly, Ms. Robinson would be entitled to 50% of any advance, unless that advance is recoupable only from Smokey's 50% interest in the songs and not recoupable against Ms. Robinson's half.

Please keep me advised as to any communications or correspondence with Smokey Robinson or his representatives. Please send all such correspondence to me at the address below, with a copy to Claudette Robinson, c/o Rick E. Norris, JD., CPA, 5757 W. Century Blvd., 7th Floor, Los Angeles, CA 90045.

My contact information:

>Owen J. Sloane
>Partner
>Gladstone Michel Weisberg Willner & Sloane, ALC
>4551 Glencoe Avenue
>Suite #300
>Marina del Rey, CA 90292
>(310) 821-9000
>osloane@gladstonemichel.com

Please advise the appropriate parties at SESAC of the foregoing and confirm that SESAC intends to cooperate with Ms. Robinson in respect to the foregoing.

Reid Alan Waltz, Esq.
SESAC, Inc.
Dennis Lord,
December 2, 2013
Page 3

Thank you.

Best regards,

Owen J. Sloane,
*Partner*

OJS:rms:lg

cc:   Claudette Robinson
      Rick Norris
      Rachel Stilwell

# EXHIBIT B

# Hagan, Patrick J.

| | |
|---|---|
| **Subject:** | FW: Claudette Robinson |
| **Attachments:** | Further Judgment - Conformed copy filed w the Copyright Office 12.20.07.pdf; ltrAttached.pdf; S011003721_1312061301000.pdf |

**From:** Owen Sloane [mailto:osloane@gladstonemichel.com]
**Sent:** Friday, December 06, 2013 11:27 AM
**To:** Mason, John
**Cc:** Rick E Norris; Rachel Stilwell; Bernawarner@aol.com
**Subject:** Claudette Robinson

So glad we had the opportunity to speak yesterday and that you are the one representing Smokey in respect to the terminations and new deals for his songs.
As we discussed, I am attaching the judgment, the list of the Community property songs and a copy of our letter to Sesac.
We would like to be kept in the loop and to insure that Claudette, our client, is paid directly for her half of all advances and other income per the judgment.She is entitled to half the publisher's share and half the writer's share.
Also once title reverts to Smokey we will want to have assignments executed for filing with the copyright office so that the official records accurately reflect that Claudette owns 50% of the copyright.
Let me know your thoughts once you review the applicable paperwork.
All the best.
Owen



Owen J. Sloane
Partner
Chair, Entertainment & Media Group
Gladstone Michel Weisberg Willner & Sloane, ALC
4551 Glencoe Ave., Suite 300
Marina del Rey, CA 90292
Tel. (310) 821-9000
Fax (310) 775-8775
osloane@gladstonemichel.com
www.gladstonemichel.com

**connect**
twitter @osloane
facebook.com/osloane
linkedin.com/in/osloane

---

NOTE: The information contained in this email may contain attorney-client privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by email and delete the original message.