John E. Mason, Jr. (SBN 51116)
Scott N. Weston (SBN 130357)
Jonathan B. Altschul (SBN 234244)
Patrick J. Hagan (SBN 266237)
**FOX ROTHSCHILD LLP**
1800 Century Park East, 3rd Floor
Los Angeles, California  90067-3005
Tel 310.598.4150 / Fax 310.556.9828
jmason@foxrothschild.com
sweston@foxrothschild.com
jaltschul@foxrothschild.com
phagan@foxrothschild.com

Neal S. Cohen (*admitted pro hac vice*)
**FOX ROTHSCHILD LLP**
1225 17th St., Suite 2200
Denver, Colorado 80202
Tel 303.292.1200 / Fax 303.292.1300
ncohen@foxrothschild.com

Attorneys for Plaintiff
WILLIAM ROBINSON, JR.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ROBINSON, JR., an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>CLAUDETTE ROGERS ROBINSON, an individual,<br><br>        Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No.: 2:14-cv-01701-JAK-FFM<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO F. R. C. P. 12(B)(6)**<br><br>[Proposed] Order filed concurrently herewith<br><br>Date:          July 28, 2014<br>Time:         8:30 a.m.<br>Courtroom:  750 – 7th Floor |

**NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 28, 2014, at 8:30 a.m., Plaintiff William Robinson, Jr. ("Plaintiff") will and hereby does move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss with prejudice all claims asserted against him in the Counterclaims filed by Defendant Claudette Rogers Robinson ("Defendant").

The grounds for this motion are that, if Defendant is correct that under California state law she owns part of the recaptured copyrights at issue, then there is a direct and irreconcilable conflict between state and federal law with respect to the ownership of the recaptured copyrights. Where state and federal law are irreconcilably in conflict, federal law preempts state law pursuant to the Supremacy Clause of the United States Constitution. As all of Defendant's claims arise out of state law, they are all preempted. Defendant therefore does not, and cannot, state a valid claim for relief.

This motion is based on this Notice, the following memorandum of points and authorities, the documents on file in this action, and upon such oral argument and submissions that may be presented at or before the hearing on this Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 16, 2014.

Dated: May 27, 2014

FOX ROTHSCHILD LLP

By: _____
Neal S. Cohen
Patrick J. Hagan
Attorneys for Plaintiff

---

**NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1
II. STATEMENT OF UNDISPUTED FACTS......................................................2
III. ARGUMENT ...................................................................................................4
    A. Federal Preemption of State Law ................................................................4
    B. Copyright Protection ....................................................................................6
        1. The Shortcomings of Renewal Rights Under the 1909 Act..................................................................................................................6
        2. Termination Rights Under the 1976 Act Replace Renewal Rights ..............................................................................................7
            a. Termination of Pre-1978 Assignments of Copyrights ..............................................................................................7
            b. Termination of Post-1978 Assignments. ............................8
            c. Termination Notwithstanding Agreements to the Contrary .................................................................................8
            d. Ownership of Recaptured Copyrights. ...............................9
    C. California Community Property Law .........................................................9
    D. The 1976 Act Preempts California Community Property Law with Respect to Recaptured Copyrights...............................................10
IV. CONCLUSION ..............................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Barnett Bank of Marion County, N.A. v. Nelson*
   517 U.S. 25, 116 S. Ct. 1103, 134 L. Ed. 2d 237 (1996) ................................... 4

*Fred Fisher Music Co., Inc. v. M. Witmark & Sons*
   318 U.S. 643, 63 S. Ct. 773, 87 L. Ed. 1055 (1943) ........................................... 6

*Freightliner Corp. v. Myrick*
   514 U.S. 280, 115 S. Ct. 1483, 131 L. Ed. 2d 385 (1995) ................................... 5

*Hisquierdo v. Hisquierdo*
   439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979) ........................................ 5, 6

*Shaw v. Delta Air Lines, Inc.*
   463 U.S. 85, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983) ....................................... 4

*Woods v. Bourne Co.*
   858 F. Supp. 399 (S.D.N.Y. 1994) ..................................................................... 7

**CALIFORNIA CASES**

*In re Hillerman*
   109 Cal. App. 3d 334 (1980) ............................................................................. 9

*In re Worth*
   195 Cal. App. 3d 768 (1987) ..................................................................... 5, 6, 9

**FEDERAL STATUTES**

17 U.S.C. § 1 (1909 Act) ............................................................................................ 6

17 U.S.C. § 24 (1909 Act) .......................................................................................... 6

17 U.S.C. § 101 (1976 Act) ........................................................................................ 6

17 U.S.C. § 203 ...................................................................................................... 7, 8

17 U.S.C. § 304 ................................................................................................ 8, 9, 10

**CALIFORNIA STATUTES**

Cal. Family Code § 760 ............................................................................................. 9

**OTHER AUTHORITIES**

Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* (Matthew Bender, Rev. Ed.) ................................................................................................. passim

U.S. Const., Article VI, cl. 2 ................................................................................ 4

**NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

Plaintiff William Robinson, Jr. ("Plaintiff") moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an Order dismissing the counterclaims of Defendant Claudette Rogers Robinson ("Defendant") because they are preempted by federal copyright law.  In support of his motion, Plaintiff states the following:

## I. INTRODUCTION

Plaintiff wrote each musical composition at issue in this case during his marriage to Defendant.  Defendant did not write any part of those compositions.  As each composition was completed, Plaintiff immediately assigned the original copyright in it to a music publisher.  The marriage ended in divorce in 1986.

As the sole author of the compositions, Plaintiff is granted the exclusive right, but not the obligation, to terminate his assignments of the copyrights after a certain number of years pursuant to the 1976 Copyright Act, ("the 1976 Act"), specifically 17 U.S.C. sections 304 and 203.  This action by Plaintiff for declaratory relief arises from adverse and erroneous assertions by Defendant that she is entitled to an undivided one-half interest in the copyrights Plaintiff seeks to recapture in accordance with the 1976 Act.  Defendant has asserted seven state law counterclaims, each of which is based on the assertion that the copyrights Plaintiff will recapture beginning in December 2014 belong in part to her pursuant to California community property law.  However, the 1976 Act expressly provides that these "recaptured" copyrights belong to the author alone, which is Plaintiff.

Accordingly, if Defendant is correct that under state law she owns part of the recaptured copyrights, then there is a direct and irreconcilable conflict between state and federal law with respect to the ownership of the recaptured copyrights.  Where state and federal law are irreconcilably in conflict, federal law preempts state law pursuant to the Supremacy Clause of the United States Constitution.  Defendant's counterclaims are therefore preempted, and they must be dismissed with prejudice.

## II. STATEMENT OF UNDISPUTED FACTS

Plaintiff's allegations are admitted by Defendant as follows:

- "Defendant admits that she is Plaintiff's ex-wife." (Answer to Complaint, Dkt. No. 17 ("Answer"), ¶ 1.)
- "Defendant admits that Plaintiff wrote the Community Musical Compositions during the parties' marriage and that the parties' marriage ended in 1986." (Answer, ¶ 2.)
- "Defendant admits that Plaintiff is a living recording artist and songwriter." (Answer, ¶ 9.)
- "Defendant admits that she married Plaintiff on November 7, 1959 and that she lived in Detroit and had two children with Plaintiff. Defendant admits that in 1972, she moved to Los Angeles with Plaintiff." (Answer, ¶ 11.)
- "Defendant admits on information and belief that Plaintiff and Defendant separated on or about May 30, 1985, were divorced in California in 1986, and that pursuant to the divorce judgment, all copyrights, contract, and royalty rights to the musical compositions created between November 7, 1959 and May 30, 1985, the Community Musical Compositions, were divided between Plaintiff and Defendant as tenants-in-common. Defendant also admits that she received a monthly spousal support payment, and real and personal property." (Answer, ¶ 12.)
- "Defendant admits that she did not write any part of the musical compositions at issue." (Answer, ¶ 13.)
- "Defendant admits that a letter was written on her behalf to SESAC, and that Exhibit A to the Complaint is a true copy of that letter." (Answer, ¶ 16.)
- "Defendant admits that her counsel sent the email that is attached to

1 the Complaint as Exhibit B." (Answer, ¶ 17.)
- "Defendant admits that there is a dispute between the parties as to their respective rights in the Community Musical Compositions." (Answer, ¶ 20.)
- "Defendant admits that she claims a 50% interest in any of the Community Musical Compositions that Plaintiff has recaptured and may recapture upon termination of the assignment to the music publisher." (Answer, ¶ 4.)
- "Defendant admits that Plaintiff purports to seek a judicial declaration regarding his ownership of all copyrights, interests therein, and income therefrom arising from his termination and recapture of his copyright assignments." (Answer, ¶ 5.)

Moreover, Defendant asserts seven counterclaims, each of which is based, in part, on the following allegations:

> On or about May 30, 1985, the couple separated, and divorced in California in 1986. Ms. Robinson and Mr. Robinson freely and voluntarily entered into and signed the Stipulated Judgment in November 1989. Through the Stipulated Judgment, the parties identified their separate and community property, and agreed to an appropriate division of their community property. The parties specifically identified the Community Musical Compositions, which are made up of 483 musical compositions created by Mr. Robinson during the marriage, between November 7, 1959 and May 30, 1985. Pursuant to the Stipulated Judgment, Ms. Robinson and Mr. Robinson each took title to "[a] one-half interest as tenants in common in [all] copyrights, contract rights

3
**NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

and/or royalty rights with respect to [the Community Musical Compositions]." Thus, through the Stipulated Judgment, the parties deemed all rights in the Community Musical Compositions to be jointly owned by Ms. Robinson and Mr. Robinson as tenants in common. The Stipulated Judgment was duly recorded with the United States Copyright Office.

(Counterclaims, Dkt. No. 18, ¶¶ 15, 16.)

## III. ARGUMENT

Defendant asserts the following counterclaims, all of which are based on state law: (1) Declaratory Relief; (2) Breach of Fiduciary Duty; (3) Constructive Fraud; (4) Negligent Misrepresentation; (5) Breach of the Implied Covenant of Good Faith and Fair Dealing; (6) Anticipatory Breach; and (7) Promissory Estoppel.

For the reasons discussed below, to the extent these counterclaims state a claim under state law, they are preempted by the 1976 Act and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

### A. Federal Preemption of State Law

Pursuant to the Supremacy Clause of the Constitution, where state law conflicts with federal law, federal law governs. U.S. Const., art. VI, cl. 2. When Congress expressly states in a law or regulation that states' laws no longer apply, states' laws are deemed expressly preempted. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95-98, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983). Where the federal law does not expressly preempt state law, but the state law and the federal law are in irreconcilable conflict in practice, then the federal law implicitly preempts the state law. *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 31, 116 S. Ct. 1103, 134 L. Ed. 2d 237 (1996). This is known as conflict preemption. Conflict preemption will render a state law inapplicable where it is "impossible for a private

party to comply with both state and federal requirements" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S. Ct. 1483, 131 L. Ed. 2d 385 (1995).

In *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979), a divorced wife sought recovery of a portion of the retirement benefits her ex-husband received as a retired railroad employee. The couple had been residents of California and subject to its community property laws. The Court held that federal law preempted California's community property law, as follows:

> [T]he community property interest that respondent seeks conflicts with § 231m [of the Railroad Retirement Act of 1974], promises to diminish that portion of the benefit Congress has said should go to the retired worker alone, and threatens to penalize one whom Congress has sought to protect. It thus causes the kind of injury to federal interests that the Supremacy Clause forbids. It is not the province of state courts to strike a balance different from the one Congress has struck.

*Hisquierdo*, 439 U.S. at 590.

Here too, under Defendant's theory of the case, state law would conflict with the express provisions of the 1976 Act with respect to ownership of termination rights, would diminish the benefit Congress has said should go to authors and would penalize one whom Congress has sought to protect.

Section 301 of the 1976 Act expressly preempts any state copyright law in nearly all instances. As a result, modern copyright issues are exclusively within the purview of federal courts under federal law. However, Congress has not enacted any broad federal law pertaining to the treatment of marital property upon divorce. *In re Worth*, 195 Cal. App. 3d 768, 778 (1987). Accordingly, where there

is no direct conflict, California state laws generally dictate the disposition of community property, including copyrights. *Id.*

Federal law preempts California state law only to the extent such state law does "'major damage' to 'clear and substantial' federal interests." *Hisquierdo*, 439 U.S. at 581. Because enforcement of community property law with respect to Plaintiff's termination rights would indeed do major damage to clear and substantial federal copyright interests, Defendant's counterclaims are preempted.

### B. Copyright Protection

The use and distribution of copyrights of musical compositions in the United States were governed by the Copyright Act of 1909 (as amended) (the "1909 Act") until Congress passed the 1976 Act (as amended). *See id.*; 17 U.S.C. § 1 (1909 Act); 17 U.S.C. § 101 (1976 Act).

#### 1. The Shortcomings of Renewal Rights Under the 1909 Act

The 1909 Act provided for an initial 28 years of copyright protection, followed by a single 28-year renewal term at the author's election. 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 9.01 (Matthew Bender, Rev. Ed.); 17 U.S.C. § 24 (1909 Act). These provisions were intended to grant to authors and their families a second opportunity to market their works after an original transfer of copyright, as the initial transfer was often accomplished before the value of the original work was recognized in the market. *See* 3 Nimmer, *supra*, § 11.01; H. Rep. No. 1476, 94th Cong., 2d Sess. 124 (1976) ("H. Rep.") (Recapture of rights was necessary to "[safeguard] authors against unremunerative transfers . . . [arising from] the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's prior value until it has been exploited").

That approach in the 1909 Act did not work as Congress anticipated. *See Fred Fisher Music Co., Inc. v. M. Witmark & Sons,* 318 U.S. 643, 656, 63 S. Ct. 773, 87 L. Ed. 1055 (1943). The renewal right was alienable by contract before it

vested, which meant in practice that most authors would transfer the renewal term along with the initial term when they first contracted with publishers, thereby depriving themselves of any ability to negotiate for the renewal term after their compositions had achieved market success. 3 Nimmer, *supra*, § 11.01[A].

### 2. **Termination Rights Under the 1976 Act Replace Renewal Rights**

To fix the problems associated with the renewal approach, Congress eliminated renewal rights altogether and replaced them with termination rights. *See* 17 U.S.C. §§ 302-04.

#### *a. Termination of Pre-1978 Assignments of Copyrights*

The termination mechanism, like the renewal mechanism before it, permits a copyright author to recapture his or her rights after the value of the copyright has increased through market recognition. Where a copyright is secured and assigned before 1978, § 304(c) permits an author to terminate the assignment and recapture the copyright 56 years from the date the copyright was secured. 17 U.S.C. § 304(c). The length of this period reflects Congress's intent to protect the rights of pre-1978 assignees, as those parties could only have expected the copyright to last 56 years, the initial 28-year copyright period and a single 28-year renewal period. *See Woods v. Bourne Co.*, 858 F. Supp. 399, 400 (S.D.N.Y. 1994).

The 1976 Act also provided that where the author is deceased, the termination and recapture interest is owned outright by the author's surviving spouse at the time of the author's death, unless there are any surviving children or grandchildren, in which case 50% of the interest is owned by the surviving spouse at the time of the author's death and the remaining 50% is distributed to the author's surviving children and grandchildren on a *per stirpes* basis. 17 U.S.C. § 304(c)(2). In such a case, a majority of those individuals with a portion of the termination interest may elect to terminate an assignment. *Id.*

7
**NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

### b. *Termination of Post-1978 Assignments.*

Termination of copyrights assigned after 1978 (regardless of when they are secured) are governed by § 203, which permits an author to terminate the assignment of a copyright 35 years after the assignment (or, if the assignment includes publication rights, the earlier of either 35 years from publication or 40 years from the assignment). 17 U.S.C. § 203. The provisions allocating termination rights to the author's statutory heirs, as well as the provisions describing the notice process, are substantially identical to their counterparts in § 304. 17 U.S.C. § 203(a)(4).

### c. *Termination Notwithstanding Agreements to the Contrary*

In order to prevent the problems under the 1909 Act in which authors assigned the renewal term along with the initial term, Congress expressly provided the following: "Termination of the grant may be effected <u>notwithstanding any agreement to the contrary</u>, including an agreement to make a will or <u>to make any future grant</u>." 17 U.S.C. §§ 203(a)(5), 304(c)(5) (emphasis added). Accordingly, Congress protected an author from being coerced into transferring his termination rights before they vest. In fact, even where an author signed an agreement and accepted payment for the assignment of his copyright, including his termination rights, he could still terminate that agreement. Thus, it was Congress's clear intent that the author's right to termination was nontransferable – including by agreement or will – until the notice is sent. 17 U.S.C. §§ 203(a)(5), 304(c)(5).

Even after the notice is sent, but before the termination date arrives, the author can transfer the copyright but only to the original assignee (*i.e.*, the entity whose interest in the copyright is about to be terminated) or the assignee's successor-in-interest, or if the author dies between the notice and the termination date, his soon-to-be-recaptured rights may be transferred by will. 17 U.S.C. §§ 304(c)(6)(C), (D). If the author dies without a will after sending the notice but

before the termination date, his rights belong to "that person's legal representatives, legatees, or heirs at law." 17 U.S.C. § 304(c)(6)(C).  Only after the termination date may the copyright be re-transferred freely pursuant to an agreement entered into after the effective date of termination.

### d. Ownership of Recaptured Copyrights.

Notably, sections 304 and 203 both expressly state that only the parties with the right to terminate are entitled to the recaptured rights in the copyright.  17 U.S.C. §§ 304(c)(6), 203(b).  In other words, the right to terminate an assignment of a copyright and all copyright interests recaptured by that termination belong to the same individual: the author.  The rights are therefore unified under the statutory scheme.

### C. California Community Property Law

California is one of several "community property" states.  Under community property law, by agreeing to the marriage, a husband and wife impliedly agree to become the co-owners of all property acquired by either spouse during the marriage.  *See* 1 Nimmer, *supra*, § 6A.03[C][2][b]; Cal. Family Code § 760; *In re Hillerman*, 109 Cal. App. 3d 334, 338 (1980) ("Each spouse's effort, time and skill are community assets, and any benefit derived therefrom belongs to both.").  Thus, a copyright acquired by a married couple living in California, or as in this case acquired by a married couple who then moves to California, becomes community property in which both spouses share a 50% interest because it presumably reflects the efforts of both spouses (one as the author, and the other in providing support for the author).  *In re Worth*, 195 Cal. App. 3d at 775.  That rule applies equally not only to the copyright, but to royalties and proceeds received from the copyright.  *Id*. at 776.

As noted in the Statement of Undisputed Facts, the couple separated in 1985 and divorced in 1986.  They freely and voluntarily entered into and signed the Stipulated Judgment in November 1989.  Through the Stipulated Judgment, the

parties identified their separate and community property, and agreed to an appropriate division of their community property. (Counterclaims, ¶ 15.)

The parties specifically identified 483 musical compositions created by Mr. Robinson during the marriage, and pursuant to the Stipulated Judgment, each took title to "[a] one-half interest as tenants in common in [all] copyrights, contract rights and/or royalty rights with respect to [the Community Musical Compositions]."

### D. The 1976 Act Preempts California Community Property Law with Respect to Recaptured Copyrights

As described above, federal law provides that Plaintiff – alone – recaptures all rights in the copyright notwithstanding any agreements to the contrary. On the other hand, Defendant asserts that under California community property and contract law, she is entitled to an undivided one-half interest in any recaptured copyrights Plaintiff may acquire in the future even though the marriage between Plaintiff and Defendant ended nearly 30 years ago. Therefore, if Defendant is correct, state law confers in the author and his former spouse equal ownership of recaptured copyrights while the federal Act confers in the author alone an exclusive property right in recaptured copyrights. In that case, there is an irreconcilable conflict between §§ 304 and 203 of the 1976 Act and California community property law with respect to ownership of the recaptured copyrights upon termination. In such circumstances, federal law preempts state law.

## IV. CONCLUSION

For the reasons stated above, the Court should dismiss each of Defendant's counterclaims because they are preempted by the 1976 Act.

Dated: May 27, 2014

FOX ROTHSCHILD LLP

By: *[signature]*
Neal S. Cohen
Patrick J. Hagan
Attorneys for Plaintiff