Zia F. Modabber (CA 137388)
  zia.modabber@kattenlaw.com
Tami Kameda Sims (CA 245628)
  tami.sims@kattenlaw.com
Jarin R. Jackson (CA 274031)
  jarin.jackson@kattenlaw.com
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone:  310.788.4400
Facsimile:   310.788.4471

Attorneys for Defendant and Counterclaimant
CLAUDETTE ROBINSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ROBINSON, JR., an individual | Case No. 14-cv-01701 JAK (FFMx) |
| Plaintiff, | [Hon. John A. Kronstadt] |
| vs. | **OPPOSITION TO MOTION TO DISMISS BY DEFENDANT AND COUNTERCLAIMANT CLAUDETTE ROBINSON** |
| CLAUDETTE ROGERS ROBINSON, an individual, | |
| Defendant. | *[Request for Judicial Notice filed concurrently herewith]* |
| CLAUDETTE ROBINSON, an individual, | |
| Counterclaimant, | |
| vs. | |
| WILLIAM ROBINSON, JR., an individual, | |
| Counterdefendant. | |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  MS. ROBINSON'S COUNTERCLAIMS ........................................... 2

III. THE PURPOSE OF COPYRIGHT TERMINATION RIGHTS ........... 4

IV.  STANDARDS FOR MOTION TO DISMISS ..................................... 5

V.   ARGUMENT ...................................................................................... 6

    A.  Preemption Standards ................................................................. 6

    B.  Ms. Robinson's Declaratory Relief Claim Is Not Preempted. ........................ 7

        1.   The Right to the Economic Benefits of the Community Musical Compositions Is Not Preempted. ................................. 7

            a.   The Right to Share in the Economic Proceeds of the Community Musical Compositions Is Freely Assignable, and Is Governed by State Law ......................... 7

            b.   The Division of Economic Benefits of the Community Musical Compositions Does Not Harm Any Federal Copyright Interests. ................................. 12

            c.   Copyright Termination Is Limited to the Termination of Rights Under the Copyright Act, Which Does Not Include the Right to Economic Benefits. ...................... 15

        2.   Ms. Robinson's Right to Copyright Ownership Is Not Preempted. ........ 17

            a.   Copyright Ownership of the Community Musical Compositions. ....................................................... 17

            b.   Mr. Robinson's Voluntarily Assignment of Recaptured Copyrights Does Not Conflict with Copyright Law. .............................................................. 18

    C.  Ms. Robinson's Remaining State Law Claims Are Not Preempted ................ 22

VI.  CONCLUSION ................................................................................... 24

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Argus & Assocs., Inc. v. Delmia Corp.*,
  2010 WL 618378 (E.D. Mich. Feb. 18, 2010) .................................... 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................... 5, 6

*Berry v. Berry*,
  277 P.3d 968 (Haw. 2012) ............................................................... 8, 13

*Broad. Music, Inc. v. Hirsch*,
  104 F.3d 1163 (9th Cir. 1997) .............................................................. 8

*Butler v. Continental Airlines Inc.*
  (S.D.Tx.2001), 2001 U.S. Dist. Lexis 20295 .................................... 23

*Classic Media, Inc. v. Mewborn*,
  532 F.3d 978 (9th Cir. 2008) .............................................................. 21

*Ex parte Burrus*,
  136 U.S. 586 (1890) .............................................................................. 7

*Firoozye v. Earthlink Network*,
  153 F. Supp. 2d 1115 (N.D. Cal. 2001) ......................................... 22, 23

*Fred Fisher Music Co. v. M. Whitmark & Sons*,
  318 U.S. 643 (1943) ............................................................................ 10

*Freightliner Corp. v. Myrick*,
  514 U.S. 280 (1995) .............................................................................. 6

*Hayes v. Carlin Am., Inc.*,
  168 F. Supp. 2d 154, 158 (S.D.N.Y. 2001) ......................................... 8

*Hayes v. Carlin Am., Inc.*,
  168 F. Supp. 2d 154 (S.D.N.Y. 2001) ................................................ 10

*Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*,
  471 U.S. 707 (1985) .............................................................................. 6

*Hisquierdo v. Hisquierdo*,
  439 U.S. 572 (1979) ............................................................... 7, 19, 20, 21

*In re Marriage of Fossum*,
  192 Cal. App. 4th 336 (2011) ............................................................. 14

ii

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

*In re Marriage of Worth,*
  241 Cal. App. 3d 768 (1998) ........................................................................ 9, 17

*In re Marriage of Zaentz,*
  218 Cal. App. 3d 154 (1990) ............................................................................... 9

*In re Stac Electronics Sec. Litig.,*
  89 F.3d 1399 (9th Cir. 1996) .............................................................................. 3

*Jamieson v. City Council of the City of Carpinteria,*
  204 Cal. App. 4th 755 (2012) ...................................................................... 10, 14

*Kenworthy v. Hadden,*
  87 Cal. App. 3d 696 (1978) ......................................................................... 14, 19

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) .............................................................................. 3

*Mills Music, Inc. v. Snyder,*
  469 U.S. 153 (1985) ............................................................................... 5, 16, 18

*Milne ex rel. Coyne v. Stephen Slesinger, Inc.,*
  430 F.3d 1036 (9th Cir. 2005) .................................................................... 20, 21

*Montz v. Pilgrim Films & Television, Inc.,*
  649 F.3d 975 (9th Cir. 2011) (en banc) ...................................... 7, 11, 22, 23

*Penguin Grp. (USA) Inc. v. Steinbeck,*
  537 F.3d 193 (2d Cir. 2008) ........................................................................ 5, 18

*Roddenberry v. Roddenberry,*
  44 Cal. App. 4th 634 (1996) ............................................................................... 9

*Roden v. Bergen Brunswig Corp.,*
  107 Cal. App. 4th 620 (2003) ...................................................................... 10, 14

*Rodrigue v. Rodrigue,*
  218 F.3d 432 (5th Cir. 2000) .................................................................... *passim*

*Rose v. Rose,*
  481 U.S. 619 (1987) ........................................................................................ 21

*Rosenthal v. Rosenthal,*
  240 Cal. App. 2d 927 (1966) ....................................................................... 14, 19

*Siegel v. Warner Bros. Entm't Inc.,*
  542 F. Supp. 2d 1098 (C.D. Cal. 2008) ........................................................ 5, 15

*Silvers v. Sony Pictures Entm't, Inc.,*
  402 F.3d 881 (9th Cir. 2005) ................................................................. 8, 15, 16

*State of Wash., Dept. of Social and Health Servs. v. Bowen,*
  815 F.2d 549 (9th Cir. 1987) ........................................................................... 22

iii

*Stewart v. Abend*,
  495 U.S. 207 (1990)................................................................................4

*Valente-Krizter Video v. Pinckney*,
  881 F.2d 772 (9th Cir. 1989) ..............................................................22

*Westmorland v. Westmorland*,
  C07-1435 MJP, 2007 WL 4358309 (W.D. Wash. Dec. 10, 2007) ..........8, 14

*Wyeth v. Levine*,
  555 U.S. 555 (2009)................................................................................6

*Yount v. Acuff Rose-Opryland*,
  103 F.3d 830 (9th Cir. 1996) ........................................8, 9, 10, 11

**Statutes**

17 U.S.C. § 106.................................................................................*passim*

17 U.S.C. § 201(d) ...............................................................................15

17 U.S.C. § 203.................................................................................*passim*

17 U.S.C. § 204(a) ...............................................................................17

17 U.S.C. § 301.................................................................................*passim*

17 U.S.C. § 304(c) ...........................................................................*passim*

45 U.S.C. § 231d(c)(3) ...........................................................................19

45 U.S.C. § 231m.................................................................................19

45 U.S.C. § 231m(b) (Supp. III 1985) .................................................20

Cal. Fam. Code § 1500 .........................................................................14

Copyright Act in 1995. Digital Performance Right In Sound Recordings
  Act of 1995, Pub. L. No. 104-39 § 2, 109 Stat. 336 (1995) ..................8

**Other Authorities**

H.R. REP. NO. 94-1476, 94th Cong., 2nd Sess. (1976)..........................5, 6, 11

H.R. REP. No.1711, 74th Cong., 1st Sess., 10 (1935) ...........................19

H.R. Rep. No. 2222, 60th Cong., 2d Sess., 14 (1909) ...........................4

Nimmer on Copyright § 9.02, p. 9-23 (1989)........................................5

S. Rep. No. 94-473, 94th Cong., 1st Sess. (1975) ................................5

U.S. Const., Article VI, cl. 2 .................................................................6

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

OPPOSITION TO MOTION TO DISMISS
14-cv-01701 JAK (FFMx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Uniformed Services Former Spouses Protection Act, Pub. L. No. 97-252,
    §§ 1001-03, 96 Stat. 730, 730-36 (1982)................................................................20

v

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION</u>**

Plaintiff William "Smokey" Robinson's motion misconstrues the nature and scope of Defendant Claudette Robinson's counterclaims.[1]   He contends that the narrow issue is whether confirming a community property interest in recaptured copyrights conflicts with, and is therefore preempted by, federal law.   But the counterclaims are much broader than mere copyright ownership, and include a claim to half of all money derived from the exploitation or sale of the Community Musical Compositions.   As discussed below, the claims derive from state law, do no harm to legally recognized federal interests, and present no preemption issues.

With respect to Ms. Robinson's claim to her share of any post-termination money derived from the Community Musical Compositions, the Copyright Act does not protect an author's right to copyright-derived proceeds.   The law is clear that the economic benefits of a copyright are ***not included*** within the exclusive rights of copyright ownership granted under section 17 U.S.C. § 106, and thus reflect no federal interest that implicates the Supremacy Clause.   Instead, the economic benefits flowing from a copyright are freely assignable and are governed by state law.   Ms. Robinson's declaratory relief claim is premised on state law community property principles as well as a stipulated judgment—a state law governed contract—voluntarily entered into by the parties.   Courts have uniformly held that no federal interest under the Copyright Act is harmed when, as here, an author has a state law obligation to share the economic benefits of a copyright with the non-author spouse.

On the issue of pure copyright ownership, Mr. Robinson's analysis is flawed, his sole authority is inapposite, and the conclusion he reaches ignores that Ms. Robinson's claims do not take from him any rights granted to him under the Copyright Act.   Specifically, Ms. Robinson does not challenge Mr. Robinson's

_____

[1] Ms. Claudette Robinson was erroneously sued as Claudette Rogers Robinson.

exclusive right to decide whether to terminate prior grants.  Nor does she seek to interfere with whether, or under what terms, Mr. Robinson enters into new grants for (or sells) the Community Musical Compositions, now that they have been exposed to the market and can fetch the fair value Congress legislatively made available to him. Mr. Robinson must simply honor his separate, non-preempted state law contractual obligations with his former wife of 27 years.

Finally, Ms. Robinson's remaining claims all involve state law rights that are qualitatively different than any right conferred under the Copyright Act. Consequently, resolution of her claims will not conflict with the Copyright Act and her claims are not preempted.  Mr. Robinson's motion to dismiss should be denied.

## II.   MS. ROBINSON'S COUNTERCLAIMS

Ms. Robinson and Mr. Robinson sang and worked together as members of The Miracles, a successful music group.  Counterclaims ¶ 10.  They married and had two children.  *Id.*  Ms. Robinson stopped touring with the group in order to care for the couple's children at home.  *Id.* ¶ 13.

During the course of their 27-year marriage, Mr. Robinson wrote numerous musical compositions, including compositions performed by the Miracles.  *Id.* ¶ 14. Ms. Robinson devoted her time and efforts to raising their children.  *Id.*

Ultimately, the couple separated and divorced in California in 1986.  Ms. Robinson and Mr. Robinson freely and voluntarily entered into and signed a stipulated divorce judgment in 1989 (the "Stipulated Judgment").  Through the Stipulated Judgment, the parties identified and divided their community property.  *Id.* ¶ 16-17.

The parties specifically identified the musical compositions created by Mr. Robinson during their marriage, calling them the "Community Musical Compositions."  *Id.* ¶ 16.  Pursuant to the Stipulated Judgment, Ms. Robinson and Mr. Robinson expressly agreed that each took "[a] one-half interest as tenants in common in [all] copyrights, contract rights and/or royalty rights with respect to [the Community Musical Compositions]."  *Id.* Specifically with respect to royalties, the

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

parties agreed to equally divide all "royalties of [Mr. Robinson's] arising [from the Community Musical Compositions which] include royalties, domestic and foreign for writers, performers (artists), producers, mechanical, publishers royalties, and composers royalties."   Request for Judicial Notice ("RJN"), Ex. A, Stipulated Judgment ¶ 8.[2]

Accordingly, pursuant to the Stipulated Judgment, the parties deemed all rights and benefits in the Community Musical Compositions to be jointly and equally owned by Ms. Robinson and Mr. Robinson, which included: (1) all royalty rights (2) all contract rights; and (3) all copyrights.  Counterclaims ¶ 16.

Mr. Robinson was given "the sole, absolute and exclusive right" to administer and exploit the Community Musical Compositions.  *Id.* ¶ 17.  He promised that in doing so, he would "not maliciously or willfully take any action with a view of damaging [Ms. Robinson] or her interest in [the Community Musical Compositions]." *Id.*  Further, Mr. Robinson expressly promised that he would "act reasonably and in good faith and as a fiduciary" to Ms. Robinson with respect to the Community Musical Compositions.  *Id.*

In or around December 2013, Ms. Robinson learned that Mr. Robinson was attempting to terminate grant agreements he had entered into with third parties, as was his exclusive right.  *Id.* ¶ 19.  These earlier grants permitted third parties to exploit for profit the Community Musical Compositions, and by terminating those grants additional publishing income would be available to the extent Mr. Robinson chose to enter into new arrangements to exploit them.[3]  *Id.*

---

[2] A true and correct copy of an excerpt of the Stipulated Judgment, which was recorded with the Copyright Office, is attached to Ms. Robinson's RJN.  In evaluating a motion to dismiss, a court may consider a document such as the Stipulated Judgment that is relied on in the complaint and whose authenticity is not contested, but that is not physically attached to the complaint.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).   Further, such a document may be considered incorporated by reference into the complaint.  *See In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996).

[3] Mr. Robinson contends in his Complaint that as each composition was completed, that the copyright was assigned to the music publisher.  Compl. ¶ 10.  However, this is

Katten

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Ms. Robinson sought assurance from Mr. Robinson that he would abide by his fiduciary duties and honor Ms. Robinson's rights in the Community Musical Compositions.  In response, Mr. Robinson commenced this action to exclude Ms. Robinson from her 50% share of the Community Musical Compositions, specifically including any new publishing income or proceeds from a possible sale. *Id.* ¶ 19.

To protect and enforce her rights, Ms. Robinson filed her counterclaim for (1) declaratory relief; (2) breach of fiduciary duty; (3) constructive fraud; (4) negligent misrepresentation; (5) breach of the implied covenant of good faith and fair dealing; (6) anticipatory breach; and (7) promissory estoppel.  *See* Counterclaims.

## III.   THE PURPOSE OF COPYRIGHT TERMINATION RIGHTS

The Copyright Act of 1909's copyright renewal rights were premised on Congress's recognition of an author's unequal bargaining power in relation to a publisher, resulting in an unfair price paid by a publisher for works that had yet to be tested by the market:

> "It not infrequently happens that the author sells his copyright outright to a publisher for a comparatively small sum."  The renewal term permits the author, originally in a poor bargaining position, to renegotiate the terms of the grant once the value of the work has been tested. . . . "If the work proves to be a great success and lives beyond the term of twenty-eight years, . . . it should be the exclusive right of the author to take the renewal term, and the law should be framed . . . so that [the author] could not be deprived of that right."

*Stewart v. Abend*, 495 U.S. 207, 218-19 (1990) (quoting H.R. Rep. No. 2222, 60th Cong., 2d Sess., 14 (1909) (alterations in quotations in original)).

///

a disputed fact.  *See* Answer ¶ 10.  At this stage in the proceedings, it is unclear whether third-party grants exist that are subject to termination for each of the copyrights in the Community Musical Compositions.

4

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

1    In fact, the nature of a copyright is that it is "incapable of accurate monetary

2    evaluation prior to its exploitation." *Id.* (quoting 2 M. Nimmer & D. Nimmer,

3    Nimmer on Copyright § 9.02, p. 9-23 (1989)).  The quintessential example is the

4    creators of Superman, who transferred the copyright in the comic book hero Superman

5    in 1930 for $130.  *See Siegel v. Warner Bros. Entm't Inc.*, 542 F. Supp. 2d 1098, 1108

6    (C.D. Cal. 2008).

7    The Copyright Act's termination provisions were enacted based on these same

8    concerns.  The right to terminate prior copyright grants "is based on Congressional

9    recognition that young authors frequently enter into long-term contracts with

10   publishers when their bargaining power is weak and their prospects for success

11   uncertain, and discover increased leverage only when they later achieve commercial

12   success." *Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 197 (2d Cir. 2008).  In

13   an attempt to balance the interests of publishers and authors, "Congress permitted a

14   publisher the opportunity to reap the initial rewards of an early investment in young

15   talent, but it allowed authors to revisit the terms of earlier grants of rights once the

16   long-term success of their works became apparent." *Id.*

17   Accordingly, the legislative intent of the termination provision for pre-1978

18   grants, 17 U.S.C. § 304(c), was to "relieve authors of the consequences of ill-advised

19   and unremunerative grants that had been made before the author had a fair opportunity

20   to appreciate the true value of his work product." *Mills Music, Inc. v. Snyder*, 469

21   U.S. 153, 172-73 (1985).  Likewise, Congress determined that the termination

22   provision for post-1978 grants, 17 U.S.C. § 203, was "needed because of the unequal

23   bargaining position of authors, resulting in part from the impossibility of determining

24   a work's value until it has been exploited."  H.R. REP. NO. 94-1476, 94th Cong., 2nd

25   Sess., at 124 (1976); S. REP. No. 94-473, 94th Cong., 1st Sess. (1975).

26   **IV.   STANDARDS FOR MOTION TO DISMISS**

27   In evaluating a motion to dismiss, a court accepts the factual allegations in the

28   complaint as true, and determines whether they "state a claim to relief that is plausible

Katten

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

5

1   on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

2   *Twombly*, 550 U.S. 544, 556 (2007)).   Requiring *plausibility* "does not impose a

3   probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556.

4   **V.**   **ARGUMENT**

5      **A.**   **Preemption Standards**

6      The Supremacy Clause, U.S. Const., Art. VI, cl. 2, preempts only those "state

7   laws that interfere with, or are contrary to, federal law." *Hillsborough Cnty., Fla. v.*

8   *Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (citation omitted).   "[T]he

9   purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v.*

10   *Levine*, 555 U.S. 555, 565 (2009) (citation omitted).   In all questions of federal

11   preemption, the court "start[s] with the assumption that the historic police powers of

12   the States were not to be superseded by the Federal Act unless that was the clear and

13   manifest purpose of Congress." *Id.* (citation omitted).

14      With specific respect to the Copyright Act, Section 301 states that "[n]othing in

15   [the Act] annuls or limits any rights or remedies under the common law or statutes of

16   any State with respect to . . . activities violating legal or equitable rights that are not

17   equivalent to any of the exclusive rights within the general scope of copyright as

18   specified by section 106." 17 U.S.C. § 301.   Congress explained that the purpose of §

19   301 was to recognize that there are "rights and remedies that are different in nature

20   from the rights comprised in a copyright and that may continue to be protected under

21   State common law or statute." H.R. REP. 94-1476 at 132.   For example, "[n]othing in

22   the bill derogates from the rights of parties to contract with each other and to sue for

23   breaches of contract." *Id.*

24      Where Congress has not intended federal law to occupy a field exclusively,

25   federal law preempts state law only when it is in "actual conflict with federal law."

26   *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).   An actual conflict occurs

27   "where it is impossible for a private party to comply with both state and federal

28

Katten

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citations omitted).

In a case cited by Mr. Robinson, on the "rare occasion when state family law has come into conflict with a federal statute," the Supreme Court has limited Supremacy Clause review to whether "Congress has 'positively required by direct enactment' that state law be pre-empted." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979) (citation omitted); *see also Ex parte Burrus,* 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states[.]").  For a court to find federal preemption of family law, the state law "must do 'major damage' to 'clear and substantial' federal interests." *Hisquierdo*, 439 U.S. at 581 (citation omitted).

**B.     Ms. Robinson's Declaratory Relief Claim Is Not Preempted.**

**1.     The Right to the Economic Benefits of the Community Musical Compositions Is Not Preempted.**

Noticeably absent from Mr. Robinson's motion to dismiss is any explanation—let alone authority—for the proposition that the Copyright Act preempts an agreement between former spouses to share ***the economic benefits*** of a copyright.  Nor does Mr. Robinson explain how such economic rights are under the exclusive purview of the Copyright Act.

**a.     The Right to Share in the Economic Proceeds of the Community Musical Compositions Is Freely Assignable, and Is Governed by State Law.**

The Copyright Act only preempts state law that grants "legal or equitable rights that are equivalent to any of the exclusive rights ***within the general scope of copyright as specified by section 106.***"  17 U.S.C. § 301(a) (emphasis added); *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011) (en banc).[4] Section 106 identifies the six exclusive ownership rights under the Copyright Act.  A

---

[4] The work at issue must also fall within the general subject matter of copyright, which is satisfied where ideas and concepts are fixed in a tangible medium.  *Montz*, 649 F.3d at 979.

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   copyright owner has the right to: (1) reproduce the work; (2) prepare derivative works;

2   (3) distribute copies; (4) publicly perform certain works; (5) publicly display certain

3   works; and (6) publicly perform sound recordings through digital audio transmission.

4   17 U.S.C. § 106(1)-(6).[5]  "Copyright . . . is a creature of statute, and *the only rights*

5   *that exist under copyright law are those granted by statute*."  *See Silvers v. Sony*

6   *Pictures Entm't, Inc.*, 402 F.3d 881, 883-84 (9th Cir. 2005) (emphasis added).

7   "Among the entire 'bundle' of rights comprising full ownership of property generally,

8   *the preemptive effect of federal copyright law extends only to the explicitly-*

9   *enumerated [rights]*."  *Rodrigue v. Rodrigue*, 218 F.3d 432, 439 (5th Cir. 2000)

10   (emphasis added).

11       Absent from the enumerated rights is the right to the economic benefits derived

12   from a copyright.  The Ninth Circuit has expressly held that "a royalty interest does

13   not bespeak an interest in the underlying copyright itself-a royalty is simply an interest

14   in receiving money when the owner of the copyright exploits it."  *Yount v. Acuff Rose-*

15   *Opryland*, 103 F.3d 830, 834 (9th Cir. 1996); *Broad. Music, Inc. v. Hirsch*, 104 F.3d

16   1163, 1166 (9th Cir. 1997) ("Assignments of interests in royalties have no relationship

17   to the existence, scope, duration or identification of a copyright, nor to 'rights under a

18   copyright.'"); *see also Hayes v. Carlin Am., Inc.*, 168 F. Supp. 2d 154, 158 (S.D.N.Y.

19   2001) (explaining that the "right to receive royalties . . . is not an 'exclusive right'

20   listed in the Copyright Statute, see 17 U.S.C. § 106").

21       Consistent therewith, federal and state courts have uniformly held that none of

22   the exclusive rights under section 106 "either expressly or implicitly include the

23   exclusive right to enjoy income or any of the other economic benefits produced by or

24   derived from copyrights."  *Rodrigue*, 218 F.3d at 435.  *See Berry v. Berry*, 277 P.3d

25   968, 987 (Haw. 2012) (holding that "the proceeds derived from the authoring-spouse's

26

27   _____
    [5] The sixth exclusive right was added to the Copyright Act in 1995.  Digital
28   Performance Right In Sound Recordings Act of 1995, Pub. L. No. 104-39 § 2, 109
    Stat. 336 (1995).

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

copyright" is not an exclusive right under section 106 and is governed by state law); *Westmorland v. Westmorland*, C07-1435 MJP, 2007 WL 4358309, at *2 (W.D. Wash. Dec. 10, 2007) (holding that the "economic benefits of a copyright" are not included within the enumerated rights under section 106, and are outside the scope of the Copyright Act); *In re Marriage of Worth*, 241 Cal. App. 3d 768, 773, 776-78 (1998) (holding that the "tangible benefits" including future royalties flowing from copyrights acquired during marriage are not equivalent to any rights within the scope of the Copyright Act).

The economic benefits of a copyright, including royalties, are thus assignable through a state's contract laws.[6]   Because the right to a royalty arises out of the contract, "it is that contract which governs the rights of a holder of a royalty interest." *Yount*, 103 F.3d at 834.   The Ninth Circuit case *Yount v. Acuff Rose-Opryland*, illustrates these principles.  In 1949, plaintiff-author Yount and his co-author created a musical composition and entered into a publishing agreement with a record company, granting the record company the copyright in the song.  *Id.* at 831.  In turn, the company agreed to pay the authors royalties.  *Id.*  Yount then assigned his royalty rights under the publishing agreement to Stevenson in 1958.  *Id.*  The initial term of the copyright for the song ended in 1983 and was renewed for a second term.  *Id.* at 833.  A dispute arose between Yount and Stevenson's successors-in-interest over who had the right to receive the domestic and foreign royalties payable during the renewal term.  *Id.* at 833.

The Ninth Circuit held that the royalty interest was a contractual right, not an interest in the underlying copyright:

---

[6] *Accord Roddenberry v. Roddenberry*, 44 Cal. App. 4th 634, 641, 643, 647 (1996) (husband's company owned Star Trek television series, developed during the marriage, and through settlement agreement, the wife was entitled to one-half of the company's profit participation in that series); *In re Marriage of Zaentz*, 218 Cal. App. 3d 154, 157, 164-65 (1990) (husband's company owned contractual rights to movie produced by husband, and the court determined that the wife was "entitled to at least an equitable portion of the income generated [after separation] as a result" of the husband's work during the marriage).

Katten

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

**Katten**

Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

> When Yount transferred the underlying copyright, he obtained a
> contractual right to royalties. He no longer had a copyright; he had a
> mere contractual right-a promise by [the record company] that it would
> make royalty payments. At that point federal copyright law essentially
> ceased to be concerned with how that contractual royalty right or
> assignments of it would be enforced.

*Id.* at 835.  Instead, state contract law governed the assignment of the royalty interest
and any interpretation of that assignment.  *Id.  See also Hayes*, 168 F. Supp. 2d at 158
(holding that "[s]ince royalty rights are contract rights (rather than exclusive rights
under federal copyright law), and because there is no renewal term for a contractual
royalty right, whether Hayes transferred his royalty rights depends on the language of
the transfer without reference to copyright rules governing renewal terms.").

The Ninth Circuit rejected the notion that the assignment of royalties conflict
with the purposes underlying the Copyright Act.  The bare assertion that copyright
law was "designed to protect authors . . . does not significantly advance analysis or
indicate that contractual royalty interests have a protection separate from the
protection afforded to renewal of the term of the copyright itself."  *Yount*, 103 F.3d at
834.  The court emphasized that "protection of authors may well come from laws that
give them the freedom to contract at will rather than from laws which prevent them
'from realizing on their assets when they are most in need of funds.'"  *Id.* (quoting
*Fred Fisher Music Co. v. M. Whitmark & Sons*, 318 U.S. 643, 657 (1943)).  The court
further admonished that an author who has assigned his royalty rights cannot turn to
the "Copyright Act to save him from his own lack of discretion."  *Id.* at 836.

With respect to the income derived from the Community Musical
Compositions,  the parties entered into a Stipulated Judgment that governed their
agreement.  A stipulated judgment is "a contract between the parties."  *Roden v.
Bergen Brunswig Corp.*, 107 Cal. App. 4th 620, 624 (2003).   As such it "must be
construed under the rules applicable to any other contract."  *Jamieson v. City Council*

10

*of the City of Carpinteria*, 204 Cal. App. 4th 755, 761 (2012). As here, "when a contract has been reduced to writing, a court must ascertain the parties' intent from the writing alone, if possible." *Yount*, 103 F.3d at 836.

Pursuant to the Stipulated Judgment, the Robinsons agreed to share equally in the economic benefits of the copyrights, by dividing 50/50 all "contract rights and/or royalties rights" with respect to the Community Musical Compositions. Counterclaims ¶ 16. These contract rights include any economic benefit, such as an advance (*See* Compl. ¶ 16, Ex. A) or royalties, which are broadly defined to include "royalties domestic and foreign for writers, performers (artists), producers, mechanical, publishers royalties, and composers royalties." RJN, Ex. A, Stipulated Judgment ¶ 8. The inclusion of "publishers royalties" was significant because the Robinsons would receive additional publishing income only after termination of the copyrights in the Community Musical Compositions. Counterclaims ¶ 19. The parties agreed to "equally divide" these contract rights and royalty rights "so that from the date [of the Stipulated Judgment] each of the parties [was] to hold an undivided one-half interest in said rights." RJN, Ex. A, Stipulated Judgment ¶ 8(a). Accordingly, the plain language of the Stipulated Judgment established that the parties were to share in all economic benefits of the Community Musical Compositions going forward.

Because Ms. Robinson's right to 50% of the economic benefits—including all royalties—flowing from the Community Musical Compositions is a right arising from state contract law, it is not preempted.[7] *See Yount*, 103 F.3d at 834; *Rodrigue*, 218 F.3d at 437. Indeed, a contractual promise to pay is qualitatively different than the rights in a copyright. *Montz*, 649 F.3d at 980. A copyright "is a public monopoly." *Id.* In contrast, contractual rights are often focused "on the personal nature of the

---

[7] An additional independent reason exists as to why the Copyright Act cannot preempt Ms. Robinson's right to foreign royalties. "It is axiomatic that United States copyright law does not apply extraterritorially." *Yount*, 103 F.3d at 835.

relationship" between the parties. *Id.* The Robinsons' agreement dictates how the economic benefits are shared vis-a-vis the two of them, and such a personal relationship is of no concern to the Copyright Act so long as none of the enumerated exclusive rights granted under the Act are abridged. *Id.*; H.R. Rep. No. 94-1476 at 132. Here, none is even touched upon, as Mr. Robinson remains in exclusive control of all of them, including any election to exercise his termination rights.

### b.   The Division of Economic Benefits of the Community Musical Compositions Does Not Harm Any Federal Copyright Interests.

Courts have consistently found that where, as here, an author-spouse has the right to exercise his exclusive rights under the Copyright Act—but is obligated to share the economic benefits of that exploitation—there is no harm to any federal interests under the Copyright Act. In *Rodrigue v. Rodrigue*, the husband became a successful painter during the parties' marriage. 218 F.3d 432. After the parties' divorce, the husband filed a declaratory relief action in federal court, asserting that he was the sole owner in all paintings created during the marriage. *Id.* at 434. The wife counterclaimed for, among other rights, an undivided one-half interest in the economic proceeds from the works. *Id.* The husband argued that federal law preempted state community property law, which meant his copyrighted works were never part of the marriage community and were exempt from division. *Id.* at 435.

The Fifth Circuit rejected the husband's overly "expansive view" of copyright preemption. *Id.* The court held that "the economic benefits of the copyrighted work belong to the community while it exists and to the former spouses in indivision thereafter" as "co-owners of equal, undivided interests." *Id.* at 435, 440.[8] In so holding, the court explained that state law giving the author-spouse management

---

[8] As an initial matter, the court determined that the bundle of rights that comprise copyright ownership do *not* include "the right to receive and enjoy the economic benefits produced by or derived from the copyright." *Rodrigue*, 218 F.3d at 437.

12

1    rights to the copyright and obligating the spouses to share in the economic benefits

2    was harmonious with federal copyright law.  *Id.* at 436-442.

3           A copyright may be registered in the name of only the author-spouse, who

4    enjoys the "*exclusive management* of copyrights created during the existence of the

5    community."  *Id.* at 439.[9]  In this framework, any potential purchaser or licensee may

6    "obtain good 'title' from the author spouse alone."  *Id.* at 441.  But the author-spouse

7    must "ensur[e] that the non author-spouse is not deprived of his or her right to one-

8    half of the economic benefits of the copyright."  *Id.* at 439.

9           The court rejected the husband's argument that spouses sharing in the economic

10   benefits of a copyright would lessen an author's incentive to create or exploit works.

11   *Id.* at 441-42.  The court rebuffed the notion that during marriage one spouse would be

12   disinclined to create works merely because the economic benefits would benefit the

13   community.  *Id.* at 442.  And following divorce, a spouse would have the incentive "to

14   exploit pre-divorce copyrights to the best of his ability rather than shelve them and

15   receive no benefit whatsoever."  *Id.*[10]

16          Consequently, even where the author-spouse alone is vested with the § 106

17   exclusive fundamental rights, and the statutory copyrights are never transferred to the

18   community, the "*fruits of the copyright*" are separate and governed by state law.  *Id.* at

19   438 n.26.  Thus, the court concluded that federal copyright law does not preempt a

20   non-author spouse's right to "an undivided one-half interest in the economic benefits"

21   of works created during the marriage.  *Id.* at 439.

22

23   _____

24   [9] The court analogized a copyright to other property that may be held in title by one
     spouse alone but whose proceeds belong to the community.  *Rodrigue*, 218 F.3d at

25   438.  For example, a spouse who joins a partnership has the exclusive right to
     participate in that partnership, but the economic benefits and liabilities flowing from
     that interest belong to the community.  *Id.*

26   [10] The court also rejected the husband's assertion that community property laws that
     varied by state would cause uncertainty in copyright law.  *Rodrigue*, 218 F.3d at 441.

27   The Copyright Act "subjects copyrights to varying state law for other purposes," such
     as transfers after death, which result in copyright co-ownerships between heirs which

28   do not impair federal interests.  *Id.*

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Following *Rodrigue*, the Supreme Court of Hawaii in *Berry v. Berry*, similarly held that after a divorce, "the non-authoring spouse is entitled to an economic interest in the copyrights" that were created during marriage.  277 P.3d at 987.  The court reasoned that the economic interest in a copyright is not equivalent to any of the exclusive rights within section 106.  *Id.*  Like *Rodrigue*, the *Berry* court determined that "allowing the nonauthoring-spouse to share in the proceeds derived from the authoring-spouse's copyright is similar to other examples where one spouse ***retains exclusive management*** over a particular asset, but spouses share in the benefits derived therefrom." *Id.* (emphasis added).  The court concluded that because spouses dividing the economic benefits to a copyright "would not touch upon those exclusive rights under § 106, state law would not be preempted."  *Id.*; *see also Westmorland*, 2007 WL 4358309, at *2 (The policies underlying the Copyright Act "relate to the infringement of the enumerated rights in the Copyright Act, not the economic benefits associated with copyright ownership").

In this case, Mr. Robinson did not merely agree to share an undivided one-half interest in economic benefits of the Community Musical Compositions with Ms. Robinson by virtue of their habitation in a community property state.  Ms. Robinson's rights arise from an express contract, the Stipulated Judgment, wherein the parties freely and voluntarily agreed to share these rights.  *See Roden*, 107 Cal. App. 4th at 624; *Jamieson*, 204 Cal. App. 4th at 761.[11]

Ms. Robinson's right to economic benefits in the Community Musical Compositions does not harm federal copyright law.  Like the state law frameworks in *Rodrigue* and *Berry*, here, Mr. Robinson has "the sole, absolute and exclusive right"

---

[11] In California, community property may be held in the title of one spouse alone, with that spouse having the obligation to ensure that the spouses jointly enjoy the benefits. *See e.g.*, *In re Marriage of Fossum*, 192 Cal. App. 4th 336, 345-46 (2011); *Kenworthy v. Hadden*, 87 Cal. App. 3d 696, 701 (1978) (spouse's partnership interest is community property); *Rosenthal v. Rosenthal*, 240 Cal. App. 2d 927, 930-31 (1966) (same).  Spouses may also agree that one spouse retain exclusive management over a community asset.  *See* Cal. Fam. Code § 1500.

14

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1    to manage and exploit the copyrights.  *See* Counterclaims ¶ 17.  He also has the

2    exclusive right to terminate the third party copyright grants that he made decades ago

3    should he choose to do so.  He is also exclusively free to choose whether to negotiate

4    new grants for the works, or even sell them.  However, Mr. Robinson must also honor

5    his state law obligation to share the proceeds of any new grant or sale with Ms.

6    Robinson, who poured her own efforts and skills into the community when the works

7    were created.  Doing so does no harm to any Copyright Act interest, permits both state

8    and federal interests to be observed and respected, and consequently does not trigger

9    preemption.

10          **c.    Copyright Termination Is Limited to the Termination of
                    Rights Under the Copyright Act, Which Does Not
11                  Include the Right to Economic Benefits.**

12          Grants of copyrights transfer one (or more) of the rights enumerated in § 106,

13   which are listed above.  Pursuant to § 201(d), "[a]ny of the ***exclusive rights*** comprised

14   in a copyright, . . . may be transferred . . . and owned separately."  17 U.S.C. § 201(d)

15   (emphasis added).   As the Ninth Circuit has explained, "[e]xclusive rights in a

16   copyright may be transferred and owned separately, but § 201(d) creates no exclusive

17   rights other than those listed in § 106."  *Silvers*, 402 F.3d at 885.

18          Section 203 defines what rights are terminable, and provides that "the exclusive

19   or nonexclusive grant of a transfer or license of ***copyright*** or of ***any right under a***

20   ***copyright***" is subject to termination."   17 U.S.C. § 203(a) (emphasis added).

21   Similarly, Section 304(c) provides that "the exclusive or nonexclusive grant of a

22   transfer or license of the ***renewal copyright or any right under it***," is subject to

23   termination.  *Id.* § 304(c)(emphasis added).  Given this scope of the rights that may be

24   terminated, Mr. Robinson cannot terminate rights to an income stream or money that

25   arise only under state law.[12]  Permitting him to do so would be unprecedented and

26   _____

27   [12] *See Siegel*, 542 F. Supp. 2d at 1140 ("Congress expressly limited the reach of what
     was gained by the terminating party[:] the terminating party only recaptured the
28   domestic rights (that is, the rights arising under title 17 to the United States Code) of
     the grant to the copyright in question.").

OPPOSITION TO MOTION TO DISMISS
14-cv-01701 JAK (FFMx)

Katten
Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

unsupportable.  He may only terminate rights exclusively granted to him under the Copyright Act.

The Copyright Act could not be more clear that termination does not impact state law rights.  Both § 203 and § 304(c) state:

> Termination of a grant under [§ 203 and § 304(c)] affects only those rights covered by the grants that arise under this title, and in ***no way affects rights arising under any other Federal, State, or foreign laws***.

17 U.S.C. § 203(b)(5) & 304(c)(6)(E) (emphasis added).

Accordingly, both the grant and termination of a copyright speak only to the enumerated statutory rights of copyright ownership—not any rights under state law. *Accord Silvers*, 402 F.3d at 883-84; *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 178 (1985) (holding that termination of a copyright "does not justify the replacement of contractual terms that unambiguously require payment of royalties to a publisher with a new provision directing payment to an author instead").

To hold otherwise, would give authors an unwarranted windfall Congress never intended.  Mr. Robinson agreed after an arms-length negotiation, to share equally all contract rights and royalty rights from the Community Musical Compositions with Ms. Robinson.  Counterclaims ¶¶ 16-18.  Now that Mr. Robinson is poised to negotiate additional lucrative publishing royalties from new copyright grants (or sale proceeds from a sale of the copyrights), he cannot use his termination rights to avoid those obligations and eviscerate Ms. Robinson's state law contract rights.[13]

///

---

[13] Mr. Robinson's distorted application of termination rights would lead to absurd results.  For example, an author could assign a copyright to a publisher in exchange for a royalty.  Decades later, he could then assign in perpetuity that royalty stream to a third party for a million dollars, without disclosing that he plans to terminate the copyright grant.  Under Mr. Robinson's misguided theory, the author could then terminate the grant to the publisher and not only recapture the copyright, but also claim that the royalty stream he assigned in exchange for the million dollars should end.  There is nothing in the statute or the legislative history suggesting Congress intended such a result.

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

In short, Mr. Robinson has not established (because he cannot) how the right to terminate exclusive rights conferred by the Copyright Act also permits him to terminate separate, state law contract obligations to Ms. Robinson in the economic benefits of the Community Musical Compositions.   Because Mr. Robinson's termination rights only permit him to terminate rights conferred by the Copyright Act, Ms. Robinson's claim to her contractual share of the economic benefits from the copyrights are not preempted.   For this reason alone, Mr. Robinson's motion should be denied.

**2.     Ms. Robinson's Right to Copyright Ownership Is Not Preempted.**

**a.     Copyright Ownership of the Community Musical Compositions.**

Turning from a right to share in the income derived from exploitation of the copyrights to ownership of the copyrights themselves, the motion fails as well.  First, at this stage in the proceedings, it is unclear whether at the time of creation, Mr. Robinson in fact assigned the copyrights in each of the musical compositions as he created them to Jobette Music Co., Inc.  *Compare* Complaint ¶ 10, *with* Answer ¶ 10. Thus, Ms. Robinson may own an undivided half interest in copyrights that were never assigned to a publisher and are not subject to termination.[14]

With respect to copyrights that may in fact have been assigned, Mr. Robinson asserts that an irreconcilable conflict exists between the Copyright Act and state law if Ms. Robinson is entitled to an undivided one-half interest in any recaptured

---

[14] Mr. Robinson concedes that under California state law, "any artistic work created during the marriage constitutes community property," including copyrights.  *In re Marriage of Worth* ("*Worth*"), 241 Cal. App. 3d at 773.  *See* Mot. at 9.  Although the *Worth* court's reasoning was based on automatic transfer pursuant to state law, in this case, Mr. Robinson also freely and voluntarily transferred one-half interest in the Community Musical Compositions to Ms. Robinson pursuant to the Stipulated Judgment.  *See* Counterclaims ¶¶ 15-16; 17 U.S.C. § 204(a) (A transfer of copyright must be "in writing and signed by the owner.").

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

copyrights.  Mot. at 10.  A close look at the legislative intent of the termination rights and the rights at issue in this action, demonstrate that no such conflict exists.[15]

### b. Mr. Robinson's Voluntarily Assignment of Recaptured Copyrights Does Not Conflict with Copyright Law.

Mr. Robinson argues that any "recaptured" copyrights belong to the author alone.  Mot. at 1.  But pursuant to the Stipulated Judgment, Mr. Robinson voluntarily assigned an undivided 50% interest in the copyrights to Ms. Robinson, and her right to retain that interest does not conflict with the letter or spirit of the Copyright Act's termination provisions.

With respect to termination rights, Congress sought to protect authors from the unequal bargaining power publishers had when authors negotiated grants—before they knew the value of their work in the public marketplace.  *See Penguin Grp. (USA) Inc.*, 537 F.3d at 197; *Mills Music, Inc.*, 469 U.S. at 172-73, 188.  The Stipulated Judgment entered into between Ms. Robinson and Mr. Robinson did not involve a publisher, had nothing to do with unequal bargaining power, and was entered into after decades of success had demonstrated the market power of the Community Musical Compositions.  Counterclaims ¶ 16.

To the extent Mr. Robinson argues that recaptured copyrights are separate, after-acquired property, his argument is misguided.  Each musical composition created during the marriage constitutes one work, and the different terms of copyright for the works do not change this.  Thus, the Stipulated Judgment provides that the parties would jointly own *all rights* "with respect to musical compositions created during the marriage."  RJN, Ex. A, Stipulated Judgment ¶ 7(8).   The agreement did not limit what they were sharing to specific terms of copyright, or only the rights in the musical compositions that existed until Mr. Robinson elected to terminate third party grants.

---

[15] Even assuming *arguendo* that the Court finds that Ms. Robinson's interest in the copyrights is preempted, Ms. Robinson's right to the economic benefits derives solely from state law and remains intact regardless of whether she and Mr. Robinson are co-owners of the underlying copyrights or whether Mr. Robinson owns the exclusive statutory rights under § 106 in full.  *See Rodrigue*, 218 F.3d at 438 n.26.

18

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Even if Mr. Robinson is correct that the title in the recaptured copyrights initially revert to him alone, he also promised that he would execute or deliver any instrument reasonably necessary to carry out the provisions of the Stipulated Judgment, and that he would not do anything to undermine those rights.  RJN, Ex. A, Stipulated Judgment ¶¶ 8(c), 20.  As such, for any recaptured copyright, 50% of its interest may be assigned to Ms. Robinson so long as it does no harm to Mr. Robinson's exclusive right to terminate – and it does not.

Mr. Robinson retains the full right to decide whether to terminate, and whether and on what terms to take the recaptured copyrights to the market and to negotiate new deals.[16]  He is not deprived of any benefit that Congress intended him to receive. In arguing to the contrary, Mr. Robinson primarily relies on the inapposite case of *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979).  That case involved the Railroad Retirement Act, a federal statutory scheme ***whose specific purpose was to give older workers the amount of money they would need to retire in comfort***.  *Id.* at 573 (citing H.R. REP. No.1711, 74th Cong., 1st Sess., 10 (1935)).  Thus, Congress specifically intended to impact and control the economic benefits of the worker.  For that reason, the Supreme Court held that the husband's future annuities under the Act were not community property based on Congress's direct and express intent to protect the retiree's income.  *Id.* at 578.  To reflect this intent, an anti-attachment provision in the Act, 45 U.S.C. § 231m, played the "most important role in the statutory scheme" by ensuring that the annuities actually reached the beneficiary.  *Id.* at 583-84.  That provision instructed that no annuity "shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever." *Id.* at 576 (quoting 45 U.S.C. § 231m).

---

[16] When, as here, the author spouse retains the exclusive right to decide whether and when to terminate copyright grants this is analogous to the management of a partnership interest.  Although only the partner spouse may participate in the partnership, the interest in the partnership belongs to both spouses.  *See Kenworthy*, 87 Cal. App. 3d at 701; *Rosenthal*, 240 Cal. App. 2d at 930-31.

19

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Further, as the Supreme Court explained, Congress had carefully contemplated and specified the amount of benefit that a divorced spouse would receive. *Id.* at 587. In "direct language," Congress cut-off a divorced spouse "on the last day of the month preceding the month in which . . . the spouse and the individual are absolutely divorced." *Id.* at 584-85 (quoting 45 U.S.C. § 231d(c)(3)). The Court held that the explicit wording "was deliberate," and emphasized that Congress had rejected an alternative proposal to award a divorced spouse a greater benefit. *Id.* at 585.

Against this backdrop of express statutory language and unequivocal legislative intent, the Court held that the wife had no community property interest in the husband's retirement benefits. *Id.* at 590. To award such an interest would cause major damage to Congress's clear and substantial interest and intent in providing benefits "to the retired worker alone." *Id.*[17]

In striking contrast to *Hisquierdo*, Mr. Robinson failed to identify any provision in the Copyright Act that provides that a recaptured copyright must remain in the hands of an author-spouse alone. First, Mr. Robinson mistakenly points to §§ 203(a)(5) and 304(c)(5), which provide that "[t]ermination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant." 17 U.S.C. §§ 203(a)(5), 304(c)(5).[18] But here, Ms. Robinson does not challenge Mr. Robinson's right to effect termination of his prior grants in the Community Musical Compositions. Counterclaims ¶ 4.

There is no indication that Congress intended this provision to preclude an author spouse from voluntarily agreeing to share a recaptured copyright with a former spouse. Mr. Robinson simply wants to expand the protections Congress afforded to

---

[17] Congress subsequently legislatively overruled *Hisquierdo* and amended the Railroad Retirement Act to allow for the application of community property laws. *See* Pub. L. No. 98-76, § 419(a)(3), 97 Stat. 411, 438 (codified at 45 U.S.C. § 231m(b) (Supp. III 1985); Uniformed Services Former Spouses Protection Act, Pub. L. No. 97-252, §§ 1001-03, 96 Stat. 730, 730-36 (1982).

[18] The Ninth Circuit has held that the phrase "agreement to the contrary" is unclear, and thus, looks to legislative history in interpreting that provision. *See Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1045 (9th Cir. 2005).

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

authors based on marketplace conditions between authors and publishers.  There is no unequal bargaining power in play, nor is the author prevented from exploiting the copyright for market value particularly where, as here, the author retains the sole right to control the copyright, including whether and under what terms to exploit it.  *Accord Milne ex rel. Coyne*, 430 F.3d at 1044-45 (holding that a 1983 grant that eliminated the right to terminate a pre-1978 grant "was freely and intelligently entered into by the parties," gave the author's heir a more advantageous grant, and thus, was aligned with the policies underlying termination rights).

Mr. Robinson also relies on §304(c)(6)(D), which states "[a] further grant, or agreement to make a further grant, of any right covered by a terminated grant is valid only if it is made after the effective date of the termination."  17 U.S.C. §304(c)(6)(D).[19]  The Ninth Circuit has explained that this provision was enacted to "avoid trafficking in future interests by third parties, which would ***deprive the original grantee*** of the opportunity to negotiate a further transfer."  *Milne ex rel. Coyne*, 430 F.3d at 1047-48.  Its purpose was to protect the ***grantee*** (not a grantor such as Mr. Robinson) and provide the grantee a right akin to the right of first refusal.  *Id.* at 1047.  Thus, contrary to Mr. Robinson's contention, "section 304(c)(6)(D) was not intended to protect him as the author or his heirs, but was instead intended to protect licensees."  *Id.* at 1048 (emphasis added).

Once again, enforcing the Stipulated Judgment does not disturb Congress's intent to protect the original grantee's "right of first refusal" under §304(c)(6)(D).  Ms. Robinson has no right under the Stipulated Judgment to negotiate new grants with third parties.  Rather, she is a co-owner with Mr. Robinson, but he has the sole right to manage the copyrights.  Ms. Robinson's rights to do not impact the original grantee in any manner whatsoever.

---

[19] *See also Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 986 n.4 (9th Cir. 2008) (stating in dicta that "it may be possible for an author . . . to transfer the future rights scheduled to revert upon service of a termination notice, subject to surviving until the time such rights vested in the author").

OPPOSITION TO MOTION TO DISMISS
14-cv-01701 JAK (FFMx)

Mr. Robinson has not established that state law giving Ms. Robinson co-ownership rights in copyrights that Mr. Robinson may choose to reclaim causes "major damage" to "clear and substantial federal interests" of the Copyright Act. *See Hisquierdo*, 439 U.S. at 581. To the contrary, there is no federal copyright interest that is undermined by letting an author-spouse voluntarily share copyright interests under state law with his former spouse.[20] In the absence of a finding of major damage to a substantial federal interest, there is no preemption. *See Rose v. Rose*, 481 U.S. 619, 628-29 (1987) (federal law controlling veterans' disability benefits did not preempt Tennessee statute regarding payment of child support); *State of Wash., Dept. of Social and Health Servs. v. Bowen*, 815 F.2d 549, 557 (9th Cir. 1987) (federal law did not preempt Washington state community property law in determining eligibility for Medicaid benefits).

For these reasons, the Copyright Act does not preempt Ms. Robinson's right to declaratory relief for an undivided half interest in the copyrights of the Community Musical Compositions.

## C. Ms. Robinson's Remaining State Law Claims Are Not Preempted.

There are additional and independent reasons why Ms. Robinson's remaining state law counterclaims are not preempted.[21]

<u>Fiduciary duty, constructive fraud, and negligent misrepresentation</u>: A claim that "protects the duty of trust or confidential relationship between the parties" contains "an extra element that makes it qualitatively different from a copyright claim," and thus is not preempted. *Montz*, 649 F.3d at 981. Similarly, a fraud claim based on an allegation that the defendant "misrepresented its intent to perform [a] contract" is "qualitatively different" from a copyright claim because of the additional

---

[20] The termination provisions provide for certain rights for the author's surviving spouse and children in the event that the author is dead. But those provisions are not at issue in this case because Mr. Robinson is alive and well.

[21] Mr. Robinson's motion to dismiss does not separately attack the sufficiency of Ms. Robinson's allegations in pleading her state law claims. His sole challenge is that even if she has stated state law claims, they are preempted by the Copyright Act.

element of misrepresentation." *Valente-Krizter Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989).   Likewise, negligent misrepresentation is not preempted by the Copyright Act because the allegation that "defendant made a misrepresentation without reasonable grounds for believing it to be true" is not part of a copyright claim and is not preempted. *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1128 (N.D. Cal. 2001).   Ms. Robinson's claims for breach of fiduciary duty, constructive fraud, and negligent misrepresentation all involve either the duty of trust or confidence owed to Ms. Robinson and/or Mr. Robinson's alleged intentional or negligent misrepresentations. Thus, these claims are not preempted.

<u>Anticipatory breach and breach of the implied covenant</u>:   "Contract claims generally survive preemption," regardless of whether the contractual obligation is express or implied. *Montz*, 649 F.3d at 980-81.  For example, a contract claim based on a duty to act even-handedly is different than any of the exclusive rights under the Copyright Act and is not preempted. *See Argus & Assocs., Inc. v. Delmia Corp.*, 2010 WL 618378, at *6 (E.D. Mich. Feb. 18, 2010).  Ms. Robinson's contract claims are not preempted because they are based on promises not covered by the Copyright Act such as Mr. Robinson's duty to protect Ms. Robinson's interests and his promise to manage the Community Musical Compositions in good faith.

<u>Promissory estoppel</u>.  A promissory estoppel claim based on an allegation that a "promise to pay" should be enforced, is not a mere copyright claim, and is not preempted. *See Firoozye*, 153 F. Supp. 2d at 1128; *see also Butler v. Continental Airlines Inc.*, (S.D.Tx.2001) 2001 U.S. Dist. Lexis 20295, at *10.  Ms. Robinson's promissory estoppel claim, which seeks *inter alia* enforcement of Mr. Robinson's promise to give her half of all proceeds flowing from the Community Musical Compositions, is not preempted.

///

///

///

OPPOSITION TO MOTION TO DISMISS
14-cv-01701 JAK (FFMx)

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Ms. Robinson respectfully requests that the Court deny Mr. Robinson's motion to dismiss her counterclaims.

Dated:  June 19, 2014

KATTEN MUCHIN ROSENMAN LLP
 Zia F. Modabber
 Tami Kameda Sims
 Jarin R. Jackson

By:   /s/ Zia F. Modabber
        Zia F. Modabber
Attorneys for Defendant and Counterclaimant
CLAUDETTE ROBINSON