John E. Mason, Jr. (SBN 51116)
Scott N. Weston (SBN 130357)
Jonathan B. Altschul (SBN 234244)
Patrick J. Hagan (SBN 266237)
**FOX ROTHSCHILD LLP**
1800 Century Park East, 3rd Floor
Los Angeles, California 90067-3005
Tel 310.598.4150 / Fax 310.556.9828
jmason@foxrothschild.com
sweston@foxrothschild.com
jaltschul@foxrothschild.com
phagan@foxrothschild.com

Neal S. Cohen (*admitted pro hac vice*)
**FOX ROTHSCHILD LLP**
1225 17th St., Suite 2200
Denver, Colorado 80202
Tel 303.292.1200 / Fax 303.292.1300
ncohen@foxrothschild.com

Attorneys for Plaintiff
WILLIAM ROBINSON, JR.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ROBINSON, JR., an individual,<br><br>      Plaintiff,<br><br>   vs.<br><br>CLAUDETTE ROGERS ROBINSON, an individual,<br><br>      Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No.: 2:14-cv-01701-JAK-FFM<br><br>**MR. ROBINSON'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS AND SUPPLEMENTAL GROUNDS FOR DISMISSAL**<br><br>Date:          July 28, 2014<br>Time:         8:30 a.m.<br>Courtroom:   750 – 7th Floor |

**TABLE OF CONTENTS**

<u>Page</u>

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENT................................................................................................3

    A.    Counterclaims II – VII Should Be Dismissed Because

        They Are Not Ripe and They Fail To State A Claim.............................3

        1.    Count II Fails to Allege a Claim for Breach of Fiduciary

                Duty...................................................................................3

        2.    Count III Fails to Allege a Claim for Constructive Fraud...........4

        3.    Count IV Fails to Allege a Claim for Negligent

                Misrepresentation...............................................................5

        4.    Count V Fails to Allege Breach of the Covenant of Good

                Faith. .................................................................................6

        5.    Count VI Fails to Allege a Claim for Anticipatory

                Breach. ...............................................................................7

        6.    Count VII Fails to Allege a Claim for Promissory

                Estoppel..............................................................................7

    B.    All of Defendant's State Law Counterclaims Are

        Preempted by the Act. ..........................................................................8

        1.    Conflict Preemption May Control in the Absence of

                Express Preemption.............................................................8

        2.    Copyrights Recaptured upon Termination Belong to The

                Author Alone and Are Unencumbered by Pre-Existing

                Agreements.......................................................................11

        3.    The Express Provisions of the Act Clearly Identify the

                Author, or the Author's Statutory Heirs, as the Exclusive

                Recipient(s) of All Rights Following the Termination of

i

1              a Copyright Assignment...........................................................12

2         4.     The Legislative History and Scholarly Commentary .................15

3         5.     Defendant's Arguments Are Inapplicable or Misguided............17

4 III.     CONCLUSION ............................................................................19

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MR. ROBINSON'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

FEDERAL CASES

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ................................................................ 3, 7

*Barnett Bank of Marion County, N.A. v. Nelson*
    517 U.S. 25 (1996) ..................................................................... 8

*Capano Music, a Div. of Britone, Inc. v. Myers Music, Inc.*
    605 F.Supp. 692 (S.D.N.Y. 1985) .......................................... 17

*Corcovado Music Corp. v. Hollis Music, Inc.*
    981 F.2d 679 (2nd Cir. 1993) ................................................... 17

*Dealertrack, Inc. v. Huber*
    460 F.Supp.2d 1177 (C.D. Cal. 2006) ...................................... 5

*Ex Parte Burrus*
    136 U.S. 586 (1890) ................................................................. 10

*Fred Fisher Music Co. v. M. Witmark & Sons*
    318 U.S. 643, 63 S.Ct. 773 (1943) ......................................... 12

*Free v. Bland*
    369 U.S. 663 (1962) ................................................................. 11

*Freightliner Corp. v. Myrick*
    514 U.S. 280 (1995) ................................................................... 8

*Harris v. Coca-Cola Co.*
    73 F.2d 370 (5th Cir. 1934) .................................................... 16

*Hisquierdo v. Hisquierdo*
    439 U.S. 572 (1979) ............................................................. 9, 10

*Kindergartners Count, Inc. v. DeMoulin*
    171 F. Supp. 2d 1183 (D. Kan. 2001) ....................................... 2

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*
    692 F.3d 983 (9th Cir. 2012) ..................................................... 7

**MR. ROBINSON'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

*Montz v. Pilgrim Films & Television, Inc.*
  649 F.3d 975 (9th Cir. 2011)................................................................. 1, 8, 9

*Ray Charles Foundation v. Robinson*
  919 F. Supp. 2d 1054 (C.D. Cal. 2013) ........................................ 17, 18

*Rodrigue v. Rodrigue*
  218 F.3d 432 (5th Cir. 2000) ...................................................................... 11

*Shum v. Intel Corp.*
  633 F.3d 1067 (Fed. Cir. 2010) .................................................................. 6

*Thomas v. Anchorage Equal Rights Comm'n*
  220 F.3d 1134 (9th Cir. 2000)..................................................................... 3

*Westmorland v. Westmorland*
  C07-1435 MJP, 2007 WL 4358309 (W.D. Wash. Dec. 10, 2007) ...................... 11

*White-Smith Music Publishing Co. v. Goff*
  187 F. 247 (1st Cir. 1911) ............................................................................ 16

*Wissner v. Wissner*
  338 U.S. 655 (1950) .......................................................................... 10, 11

*Yount v. Acuff Rose-Opryland*
  103 F.3d 830 (9th Cir. 1996) ...................................................................... 11

CALIFORNIA CASES

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*
  2 Cal. 4th 342 (1992).................................................................................... 6

*Century Surety Co. v. Crosby Ins., Inc.*
  124 Cal. App .4th 116 (2004)........................................................................ 6

*In re Marriage of Worth*
  241 Cal. App. 3d 768 (1998) ................................................................ 11, 12

*Jackson v. County of Los Angeles* (1997)
  60 Cal. App. 4th 171 (1997)......................................................................... 7

*Pellegrini v. Weiss*
  165 Cal. App. 4th 515 (2008)....................................................................... 3

*Toscano v. Greene Music*
    124 Cal. App. 4th 685 (2004)..................................................................... 8

*Vista v. Robert Thomas Sec.*
    84 Cal. App. 4th 882 (2000) .................................................................. 5, 8

**OTHER CASES**

*Berry v. Berry*
    277 P.3d 968 (Haw. 2012) ....................................................................... 11

**FEDERAL STATUTES**

17 U.S.C. § 101........................................................................................... 15, 16

17 U.S.C. § 304(c)(2) ...................................................................................... 15

17 U.S.C. § 304(c)(5)(6) .................................................................................. 14

17 U.S.C. § 504(c) ............................................................................................. 2

28 U.S.C. §§ 2201-02 ........................................................................................ 4

**MR. ROBINSON'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

## I.    **INTRODUCTION**

Counterclaims II – VII should be dismissed pursuant to Rule 12(b)(1) and (6) because they are not ripe and they fail to state a claim for relief.  As discussed below, the counterclaims are based on conduct that Defendant assumes will occur but has not yet occurred and allege hypothetical damages that might result, if at all, from possible future conduct.

Moreover, Defendant's opposition to preemption rests on a fundamental misunderstanding of the law of preemption.  Defendant argues that "[t]he Copyright Act **only** preempts state law that grants 'legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.'"  Opposition at 7-8 [original emphasis deleted, new emphasis added.]  In support of that conclusion Defendant relies on *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011)(en banc).

However, *Montz* does not say what Defendant claims.  Rather, the Court said: "The Copyright Act of 1976 **expressly** preempts state claims where the plaintiff's work 'come[s] within the subject matter of copyright' and the state law grants 'legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright.'" *Montz* at 979 [emphasis added].  *Montz* addressed only express preemption; it did not involve issues of conflict preemption on which Plaintiff's motion to dismiss is based.

In addition to express preemption, federal law preempts state law when it is in actual conflict with federal law.  Such a conflict is presented in this case.  Defendant's counterclaims seek declaratory relief and damages based on her assertion that state community property and contract law entitles her to an undivided half-interest in all recaptured copyrights, including royalties from contracts which may or may not be secured by a future assignment of Plaintiff's recaptured copyrights.  On the other hand, the Act expressly provides that an author may terminate his assignment of a copyright after a certain number of years,

1

and when he does terminate it, all of the rights revert to the author.  The Act also provides that "[t]ermination of the grant may be effected notwithstanding any agreement to the contrary."  Congress's express purpose for the termination and reversion provisions was to allow the author to receive the true economic value of his work in his senior years by recapturing an unencumbered copyright, including the unencumbered right to derive an economic benefit from that copyright.

Defendant's argument that the Act does not protect an author's right to copyright-derived proceeds conflicts with her own recognition of the purpose of the Act's termination provisions.  As she states:

> Accordingly, the legislative intent of the termination provision for pre-1978 grants, 17 U.S.C. § 304(c), was to "relieve authors of the consequences of ill-advised and remunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work product." *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 (1985).

Opposition at 5.  Nor does the Act create any special rights for former spouses or for the principles of community property.

Defendant's conclusion – that because the right to economic benefits from a copyright is not included in § 106(a) it cannot be preempted by the Act – is flawed. Many provisions other than § 106 deal with the economic benefits that flow from a copyright, including § 504, which deals with infringement and statutorily defines damages, and § 115, which identifies royalties for compulsory licenses.  *See* 17 U.S.C. §§ 504(c), 115(c).  State laws conflicting with the infringement provisions of the Act are preempted.  *Kindergartners Count, Inc. v. DeMoulin*, 171 F. Supp. 2d 1183, 1193-94 (D. Kan. 2001).  To the extent state law supports Defendant's counterclaims that she has an undivided half-interest in the recaptured copyrights, including the right to the economic benefit of those copy-rights, that state law is in direct conflict with the Act and is therefore preempted.

**MR. ROBINSON'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

II.   **ARGUMENT**

   A.   **Counterclaims II – VII Should Be Dismissed Because They Are Not Ripe and They Fail To State A Claim.**

   Pursuant to the Court's direction at the June 30, 2014 Scheduling Conference, Plaintiff submits the following additional arguments in support of his motion to dismiss Counterclaims II - VII.

   A cause of action may be dismissed pursuant to <u>Fed.R.Civ.P. 12(b)(6)</u> if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain a sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009) (internal quotation marks omitted).  Counterclaims II – VII request hypothetical damages that Defendant **might** incur in the future, as such, they are not ripe.  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) ("the Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract'").

   1.   **Count II Fails to Allege Breach of Fiduciary Duty.**

   To state a claim for breach of fiduciary duty, a party must allege the following: (1) That a fiduciary relationship existed; (2) That there was an act or omission by the fiduciary in breach of such duty; (3) That plaintiff sustained damages; and (4) That the damages were proximately caused by the fiduciary's breach. *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524 (2008).

   Defendant alleges that "[b]y willfully taking steps to usurp Ms. Robinson's valuable rights in the Community Musical Compositions, Mr. Robinson has breached his fiduciary duty to Ms. Robinson," Counterclaim, ¶30. However, the only "steps" Defendant actually alleges is Plaintiff's filing of the Complaint. Counterclaims, ¶ 28.  Plaintiff's request for declaratory relief is meant to allow the parties to avoid the breach of any duty by procuring a judicial declaration of what

3

those duties actually are.  10B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2751 (3rd ed.) ("[The Declaratory Judgment Act] gives a means by which rights and obligations may be adjudicated in cases involving an actual controversy . . . The remedy made available by the Declaratory Judgment Act and Rule 57 is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued.").  Here, Plaintiff's Complaint seeking declaratory relief does not constitute a breach of any duty, as he has the right to ask the Court to determine his rights upon termination and recapture of the copyrights in advance of the accrual of any other cause of action by either party.  *See* 28 U.S.C. §§ 2201-02.  By filing his complaint, Plaintiff has clearly manifested an intent to clarify his obligations, not to breach them.

Second, Defendant has failed to satisfy the damages requirement.  Instead, she alleges the following:

As a direct and proximate result of Mr. Robinson's conduct, Ms. Robinson has suffered damages, including without limitation compensatory damages in the amount of any income Mr. Robinson **will receive** in any way related to the Community Musical Compositions at any time.

Counterclaims, ¶ 31 [emphasis added].  Defendant concedes that her damages, if any, will occur in the future.  Thus, her cause of action for breach of fiduciary duty has not yet accrued.  *See Vista v. Robert Thomas Sec.*, 84 Cal. App. 4th 882, 887 (2000) (where monetary damages are an element of cause of action, the cause of action does not accrue until actual, pecuniary loss is suffered).

### 2. Count III Fails to Allege a Claim for Constructive Fraud.

To state a claim for constructive fraud, a party must allege: (1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) **<u>resulting damage</u>**.  *Dealertrack, Inc. v. Huber*, 460

4

F.Supp.2d 1177, 1183 (C.D. Cal. 2006) [emphasis added.]  Again, Defendant fails to adequately allege damages.

Defendant alleges that "Mr. Robinson commenced this action in an effort to exclude Ms. Robinson from the full benefit of her 50% share of the Community Musical Compositions, specifically including the **new publishing income**." Counterclaims, ¶¶ 19, 32 [emphasis added].  It is undisputed that Plaintiff has only begun to exercise his termination rights, and there is no allegation that Plaintiff has recaptured any copyrights, let alone that he has sold or reassigned those copyrights in exchange for "new publishing income."  Thus, Defendant has not "exclude[d] Ms. Robinson from the full benefit of her 50% share" of anything.  Again, Defendant's alleged damages are cast as a percentage of what "Mr. Robinson **will receive**" in the future.  Counterclaim, ¶ 37 [emphasis added].  Thus, she has failed to allege any "**resulting damages**."  And again, asking the Court to determine the scope of his duties does not constitute a breach of those duties.  *See* Wright & Miller, *supra*, § 2751.

### 3.    Count IV Fails to Allege Negligent Misrepresentation.

To state a claim for Negligent Misrepresentation, a party must allege: (1) a false statement of a material fact that the defendant honestly believes to be true, but made without reasonable grounds for such belief; (2) made with the intent to induce reliance; (3) reasonable reliance on the statement; and (4) damages. *Century Surety Co. v. Crosby Ins., Inc.*, 124 Cal. App .4th 116, 129 (2004).

First, contrary to Defendant's allegation, Plaintiff was not required to disclose "that he purported to own any such [termination] rights."  Counterclaims, ¶ 41. The existence of those termination rights were neither exclusively known nor actively suppressed by him, to the extent they could be considered an "asset" subject to division on divorce.  *See Shum v. Intel Corp.*, 633 F.3d 1067, 1079 (Fed. Cir. 2010) (no duty to disclose absent evidence of active suppression of fact or evidence that defendant had exclusive knowledge of fact).  Defendant fails to

allege any fact that Plaintiff actually intended in 1989 to deprive Defendant of any right which might vest in Plaintiff thirty years later.

Second, Defendant's alleged damages are again cast in terms of what "Mr. Robinson **will receive**" in the future. Counterclaim, ¶ 45 [emphasis added]. Thus, she has failed to allege actual damages resulting from the alleged breach.

### 4.  Count V Fails to Allege Breach of Covenant of Good Faith.

To state a claim for Breach of Implied Covenant of Good Faith and Fair Dealing, a party must allege the following:  (1) the existence of a contract; (2) the plaintiff's performance (or excuse for nonperformance); (3) the defendant's interference with the plaintiff's right to the benefits of the contract; and (4) damage to the plaintiff therefrom.  *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc*., 2 Cal. 4th 342, 371 (1992).  Counterclaim V is based on the allegation that Plaintiff "chose to exercise a non-obligatory right under the Copyright Act, which he knew would result in Ms. Robinson being divested of all of her rights in the Community Musical Compositions."  Counterclaims, ¶51.

Yet Defendant states that she "does not challenge Mr. Robinson's exclusive right to decide whether to terminate prior grants" or "to interfere with whether, or under what terms, Mr. Robinson enters into new grants for (or sells) the Community Musical Compositions, now that they have been exposed to the market and can fetch the fair value Congress legislatively made available to him."  Opposition at 1-2.  Given Defendant's express position that she does not oppose Plaintiff's exercise of the termination/recapture rights, she is judicially estopped from asserting a claim against him for doing just that.  *Jackson v. County of Los Angeles* (1997) 60 Cal. App. 4th 171, 181 (1997) ("[T]he doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.");

1   *see also Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983,

2   993 (9th Cir. 2012).

3        And again, Defendant's assertion of damages, based on what "Mr. Robinson

4   **will receive**" in the future, Counterclaim, ¶ 53 [emphasis added], are insufficient.

5            **5.   Count VI Fails to Allege a Claim for Anticipatory Breach.**

6        Defendant's Counterclaim VI for anticipatory breach is based on the

7   following bare allegation: "By his acts and statements, Mr. Robinson has indicated

8   that he will not substantially perform his contractual duties pursuant to the

9   Stipulated Judgment."  Counterclaims, ¶ 56.  The only "act or statement" by

10  Plaintiff has been his filing of the Complaint, which does not include any

11  repudiation of duties.  Asking the Court to determine Plaintiff's duties so that he

12  can avoid a breach is not tantamount to non-performance of a duty.  *See* Wright &

13  Miller, *supra*, § 2751.  Plaintiff has thus failed to allege facts from which the Court

14  can "determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*,

15  556 U.S. 662, 678–79.

16           **6.   Count VII Fails to Allege a Claim for Promissory Estoppel.**

17       To state a claim for Promissory Estoppel, a party must allege the following:

18  (1) a clear promise; (2) reliance; (3) substantial detriment; and (4) damages

19  measured by the extent of the obligation assumed and not performed.  *Toscano v.*

20  *Greene Music*, 124 Cal. App. 4th 685, 692 (2004).  The alleged "promise" is that

21  the parties would each receive a one-half interest in all copyrights, contract rights

22  and/or royalty rights.  Counterclaims, ¶ 59.  However, Defendant makes no

23  allegation of "damages measured by the extent of the obligation assumed and not

24  performed" or of any obligation that Plaintiff has not performed.  Rather, her

25  allegations are directed at future conduct and future, hypothetical damages based

26  on the "income Mr. Robinson **will receive** in the future."  Counterclaims, ¶ 62.

27  This claim, like the others, must be dismissed on that basis.  *See Vista, supra*, 84

28  Cal. App. 4th at 887.

**B.**   **All of Defendant's State Law Counterclaims Are Preempted by the Act.**

    **1.**   **Conflict Preemption May Control in the Absence of Express Preemption.**

It is well established that where state law and federal law are in irreconcilable conflict in practice, federal law implicitly preempts the state law. *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 31, 116 S.Ct. 1103, 134 L.Ed. 2d 237 (1996); *see also Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S. Ct. 1483, 131 L. Ed. 2d 385 (1995)(Conflict preemption will render a state law inapplicable where it is "impossible for a private party to comply with both state and federal requirements" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Defendant agrees that federal law, including the Act, preempts state law when state law is in actual conflict with federal law.  Opposition at 6.

Yet Defendant offers the conclusion, incorrectly based on § 301(a) of the Act and *Montz* that "[t]he Copyright Act **only** preempts state law that grants 'legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.'"  Opposition at 7. Defendant's conclusion not only misstates *Montz*, it also ignores the principles of conflict preemption.  The *Montz* Court was only concerned  with express preemption, stating "[t]he Copyright Act of 1976 **expressly** preempts state claims where the plaintiff's work 'come[s] within the subject matter of copyright' and the state law grants 'legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright.'" *Montz* at 979 [emphasis added].

Next, Defendant attempts to distinguish *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979) by arguing that  the case "involved the Railroad Retirement Act, a federal statutory scheme whose specific purpose was to give older workers the amount of money they would need to retire in comfort.

[Citations omitted.]  Thus Congress specifically intended to impact and control the economic benefits of the worker."  Opposition at 19-21 [emphasis omitted.]  Yet through the termination and recapture provisions of the Act, Congress was similarly intending to "impact and control the economic benefits of the" author. Indeed, Defendant concedes the following:

> The right to terminate prior copyright grants "is based on Congressional recognition that young authors frequently enter into long-term contracts with publishers when their bargaining power is weak and their prospects for success uncertain, and discover increased leverage only when they later achieve commercial success."

Opposition at 5, citing *Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 197 (2nd Cir. 2008).

By attempting to balance the economic interest of publishers and authors through the termination provisions, Congress was directly impacting and controlling the economic benefits of authors just as it was "intending to impact and control the economic benefits of the worker" in the Railroad Retirement Act. Defendant is correct when she states that "'[T]he purpose of Congress is the ultimate touchstone in every pre-emption case.'"  Opposition at 6.  Here, Congress's intent to protect the economic benefits of copyrights for authors is clear.

Defendant also asserts that Congress legislatively overturned *Hisquierdo* by passing the Uniformed Services Former Spouses Protection Act in 1982 and amending the Railroad Retirement Act in 1983.  Opposition at 20, n.17.  While Congress may have seen fit to make changes in those other legislations, it has not made similar changes in the Act.  Indeed, Congress has revisited termination rights

provisions of the Act four times since the Act was passed in 1976.[1]  Nevertheless, Congress has elected not to amend it to address community property law as it has done elsewhere.  When Congress intends to protect a state's community property regime, it will do so explicitly in the language of the statute. Despite having several opportunities to amend the Copyright Act, Congress has never taken action to apply state community property law to either original copyrights or recaptured copyrights.

Defendant cites *Ex Parte Burrus*, 136 U.S. 586, 593-94 (1890) for the proposition that "[t]he that the "'whole subject of the domestic relations of a husband and wife, parent and child, belongs to the laws of the states.'"  Opposition at 7.  Yet there are many instances where community property rights which conflicted with federal law were preempted, including in § 304(c)(2) of the Act, as described in Section II.B.3, *infra*.  For example, in *Wissner v. Wissner*, 338 U.S. 655 (1950), the Court rejected and reversed a lower court decision in favor of a widow's community property claim to one-half the proceeds of a life insurance policy purchased by her husband, a deceased Army officer, during their marriage and through a federally-assisted program.  *Id*. at 658.  Because the National Service Life Insurance Act gave the insured an express right to designate the beneficiary, the Court held that the entire proceeds must be paid to the husband's mother as he had directed.  *Id*. at 659 (citing 38 U.S.C. 802(g)).  Otherwise, state community property principles would have frustrated Congress' unequivocal intent that the insured decide who should receive the policy proceeds.  *Id*. at 658-59.

---

[1] 17 U.S.C. § 304; Copyright Act of 1976, Pub. L. 102-307, Title I, §102(a), (d), June 26, 1992, 106 Stat. 264, 266; Pub L. 105-80, § 12(a)(9), Nov. 13, 1997, 111 Stat. 1535; Pub. L. 105-298, Title I, §§ 102(d)(1), 103, Oct. 27, 1998, 1112 Stat. 2827, 2829; Pub L. 107-273, Div. C, Title III, § 13210(10), Nov. 2, 2002, 116 Stat. 1910

1    Similarly, in *Free v. Bland*, 369 U.S. 663 (1962), the Court found a federal

2    Treasury regulation allocating ownership rights in savings bonds sufficient to

3    preempt state community property law. *Id*. at 669.  A husband had purchased

4    United States savings bonds with community funds in the name of both spouses.

5    *Id*. at 665. Under Treasury regulations then in effect, when a co-owner of the bonds

6    died, only the surviving co-owner received the entire interest in the bonds. *Id*.

7    (citing 31 U.S.C. s 757c(a)).  The Court held that the regulation prevailed over

8    Texas' state community property law which would have conferred joint ownership

9    between the husband, the surviving co-owner, and the deceased co-owner's son. *Id*.

10   Because the allocation of ownership according to state community property law

11   conflicted with the federal Regulation, the Court found that the state law was

12   preempted.  *Id*. at 666.

13   Accordingly, federal law preempts state community property law where, as

14   here, the two are in irreconcilable conflict.

15   **2.    Copyrights Recaptured upon Termination Belong to The**

16   **Author Alone and Are Unencumbered by Pre-Existing**

17   **Agreements.**

18   Defendant relies on several cases – *Yount v. Acuff Rose-Opryland,* 103 F.3d

19   830 (9th Cir. 1996)*, Rodrigue v. Rodrigue,* 218 F.3d 432 (5th Cir. 2000)*, Berry v.*

20   *Berry*, 277 P.3d 968 (Haw. 2012)*, Westmorland v. Westmorland,* C07-1435 MJP,

21   2007 WL 4358309 (W.D. Wash. Dec. 10, 2007) *and In re Marriage of Worth,* 241

22   Cal. App. 3d 768 (1998) -- for the notion that the Act does not govern the

23   economic benefits derived from a copyright.  However, all of those cases involve

24   initial grants of copyrights, not copyrights recaptured upon termination.

25   Defendant's entire argument is based on the assumption that the legislative intent

26   with regard to initial copyrights is the same as the intent with regard to recaptured

27   copyrights.  It is not.  Accordingly, none of her support is applicable to the specific

28   issue presented in this motion to dismiss – did Congress intend that a recaptured

1   copyright is unencumbered by any pre-existing state law agreement such that a

2   claim based on a pre-existing state law agreement is preempted?

3       The best authority for the Court's consideration is the language of the Act

4   itself, the legislative history and, to the extent the Court deems it useful, scholarly

5   commentary that addresses the issue.

6       **3.    The Express Provisions of the Act Clearly Identify the**

7             **Author, or the Author's Statutory Heirs, as the Exclusive**

8             **Recipient(s) of All Rights Following the Termination of a**

9             **Copyright Assignment.**

10      As explained in the Plaintiff's Opening Brief, the termination provisions in

11  the 1976 Act were intended to remedy the shortcomings of the renewal rights

12  granted in the 1909 Act.  "[T]he objective of a second chance for authors was

13  largely frustrated by the Supreme Court decision in *Fred Fisher Music Co. v. M.*

14  *Witmark & Sons*, recognizing the validity of assignments of renewal rights prior to

15  their vesting."  3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright

16  ("Nimmer") § 11.01 (Matthew Bender, Rev. Ed.), citing *Fred Fisher Music Co. v.*

17  *M. Witmark & Sons*, 318 U.S. 643, 659, 63 S.Ct. 773, 780 (1943).  That decision

18  left authors vulnerable to aggressive publishers who had the economic leverage to

19  force authors to sell their renewal rights along with the original term of copyright.

20  *Id*.

21      The termination rights of the 1976 Act "constitute an attempt to avoid the

22  difficulties encountered under the renewal concept, while at the same time

23  achieving a recapture of rights."  3 Nimmer § 9.02.  The operative provisions of

24  the 1976 Act follow:

25      **(c)   Termination of Transfers and Licenses Covering Extended**

26          **Renewal Term**.— In the case of any copyright subsisting in either its

27          first or renewal term on January 1, 1978, other than a copyright in a

28          work made for hire, the exclusive or non-exclusive grant of a transfer

or license of the renewal copyright or any right under it, executed before January 1, 1978, by any of the persons designated by subsection (a)(1)(C) of this section [**in this case, "(i) the author of such work, if the author is still living**"], other than by will, is subject to termination under the following conditions:

[. . .]

(**5**) Termination of the grant may be effected notwithstanding **any agreement to the contrary**, including an agreement to make a will or to make any future grant.

(**6**) . . . In the case of a grant executed by one or more of the authors of the work, all of a particular author's rights under this title that were covered by the terminated grant revert, upon the effective date of termination, to that author or, if that author is dead, to the persons owning his or her termination interest under clause (2) of this subsection, including those owners who did not join in signing the notice of termination under clause (4) of this subsection.

17 U.S.C. § 304(c)(5)(6) [emphasis added].[2]

Congress's termination mechanism incorporated in the 1976 Act avoids the problem under the 1909 Act where publishers had the leverage to force a grant of

---

[2] Section 203 of the Act concerns copyrights acquired after January 1, 1978 and is applicable to only a small number of the works at issue in this case. Accordingly, in the interest of brevity and simplicity, Plaintiff's arguments are based on § 304 alone. Nonetheless, the termination provisions in § 203 are substantially identical to those in § 304 for the purposes of this motion.

**MR. ROBINSON'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

1  renewal rights along with the original copyright.  *Id.*

2      The statutory language is clear that the recaptured copyright belongs to the

3  author and that "**any** agreement to the contrary" is unenforceable.  The statutory

4  language is not limited to any specific type of agreement.  No exceptions are made,

5  and certainly no exception based on a stipulated agreement in connection with a

6  divorce.

7      Nor can it be argued that Congress merely overlooked spouses and family

8  members when crafting the termination provisions.  Those interests are addressed

9  in subsection (c)(2) and (6):

10      (**2**) Where an author is dead, his or her termination

11      interest is owned, and may be exercised, as follows:

12      (**A**)   The widow or widower owns the author's entire

13      termination interest unless there are any surviving

14      children or grandchildren of the author, in which case the

15      widow or widower owns one-half of the author's interest.

16      (**B**)   The author's surviving children, and the surviving

17      children of any dead child of the author, own the author's

18      entire termination interest unless there is a widow or

19      widower, in which case the ownership of one-half of the

20      author's interest is divided among them.

21      (**C**)  The rights of the author's children and grandchildren

22      are in all cases divided among them and exercised on a

23      per stirpes basis according to the number of such author's

24      children represented; the share of the children of a dead

25      child in a termination interest can be exercised only by

26      the action of a majority of them.

27      (**D**)   In the event that the author's widow or widower,

28      children, and grandchildren are not living, the author's

14

MR. ROBINSON'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

1    executor, administrator, personal representative, or

2    trustee shall own the author's entire termination interest.

3  17 U.S.C. § 304(c)(2); *see also* 17 U.S.C. § 101 ("The author's 'widow' or

4  'widower' is the author's surviving spouse under the law of the author's domicile at

5  the time of his or her death, whether or not the spouse has later remarried.").

6  Congress made no provision for former spouses or community property laws.

### 4.    The Legislative History and Scholarly Commentary

8       Through the grant of termination rights, Congress intended to return to the

9  author the economic benefits of the copyright he or she assigned away before the

10  fair market value of the copyright was known.  "The renewal provisions

11  incorporated in the 1909 Act, and continued under the present Act, with respect to

12  works in statutory copyright prior to January 1, 1978, were intended to grant to

13  authors and their families a second opportunity to market their works after an

14  original transfer of copyright."  *See* 3 Nimmer § 9.02.  The rationale for this was to

15  "benefit authors by enabling them or their families to have a second opportunity to

16  market their works after an original sale of the copyright."  *Id*., citing *Stewart v.*

17  *Abend*, 495 U.S. 207, 220 , 225, 110 S. Ct. 1750 , 109 L. Ed. 2d 184 (1990)

18  (describing the reversion of renewals as a "second chance").

19       Construing the renewal provision of the 1909 Act, the courts have noted that

20  "[t]here are at least sentimental reasons for believing that Congress may have

21  intended that the author, who according to tradition receives but little for his work,

22  and afterwards sees large profits made out of it by publishers, should later in life be

23  brought into his kingdom."  *White-Smith Music Publishing Co. v. Goff*, 187 F. 247,

24  251 (1st Cir. 1911); *see also Harris v. Coca-Cola Co*., 73 F.2d 370, 371 (5th Cir.

25  1934) ("The second period is intended not as an incident of the first for the benefit

26  of the then owner of the expiring copyright, but as a second recognition extended

27  by the law to the author of the work that has proven permanently meritorious. …").

28

**MR. ROBINSON'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

Congress recognized that the economic value of a work is unknown until it has been proven in the marketplace.  Historically and practically, a work cannot be marketed until it has been sold to a publisher or distributor.  3 Nimmer § 9.02. "These circumstances seem to offer ample grounds for a 'second chance' for authors without justifying an invidious comparison to other forms of property."  *Id*.

Thus, Congress intended to grant authors the right to terminate assignments of copyrights that were originally granted to them upon the creation of the works, and to recover the **economic benefits thereto**.  Indeed, the remuneration of the author was the **express and primary** goal of Congress in enacting Sections 304 and 203.  *See* H. Rep. No. 1476, 94th Cong., 2d Sess. (1976) ("H. Rep."), p. 124 (recapture of all rights related to the work is necessary to "[safeguard] authors against remunerative transfers . . . [arising from] the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's prior value until it has been exploited."); *see also* H.R. Rep. No. 2222, 60th Cong., 2d Sess. (1909) p. 14 ("If the work proves to be a great success and lives beyond the term of twenty-eight years, . . . it should be the exclusive right of the author to take the renewal term, and the law should be framed . . . so that [the author] could not be deprived of that right."); *see also Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 683 (2nd Cir. 1993) (purpose of right of renewal of copyright is to provide authors second opportunity to obtain remuneration for their works); *see also Capano Music, a Div. of Britone, Inc. v. Myers Music, Inc.*, 605 F.Supp. 692, 695 (S.D.N.Y. 1985) (until the copyright renewal period arrives, renewal rights are not vested in anyone; the most anyone can claim is a mere expectancy or contingent interest and, when renewal time arrives, rights vest in one of four classes of persons listed in the Copyright Act, according to circumstances existing at time of vesting).

The notion that Congress was not concerned with the economic benefits derived from at least a recaptured copyright is simply unsupportable.  Congress

intended for authors to recapture the full economic benefit of any copyrights whose assignments were terminated in accordance with sections 203 and 304 of the Act.

### 5.   Defendant's Arguments Are Inapplicable or Misguided.

Defendant offers several arguments in support of her opposition to preemption, but they are either inapplicable or misguided.  For example, Defendant's argument that the termination provisions do not apply to agreements directing the distribution of the economic benefits derived from the copyright is inconsistent with Congressional intent.

In *Ray Charles Foundation v. Robinson*, 919 F. Supp. 2d 1054, 1066 (C.D. Cal. 2013), a case involving recaptured, not initial, copyrights, the Ray Charles Foundation argued that the children of Ray Charles were  "free to terminate the grants – they will just be liable to the Foundation for at least $500,000 for breaching the agreement."  Similarly, Defendant here argues that Plaintiff is free to terminate the assignments but he must share with Defendant any economic value he reaps from a subsequent assignment.  The *Charles* Court dismissed the Foundation's argument, holding the following:

> [F]orcing statutory heirs to choose between incurring a penalty for breaching an agreement or abandoning statutory termination rights is just a more creative way of preventing the exercise of termination rights in the first place.  3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 11.07[E][2][b][ii], [3] (2012) (explaining how penalties operate as "agreements to the contrary").  As a result, the Foundation has no probability of prevailing on its breach of contract claim.

*Id.*

Here too, the Stipulated Judgment in the divorce case is nothing more than "an agreement to the contrary" because it purports to reduce the amount of

17

1  Plaintiff's remuneration even if he is free to terminate his assignments and sell
2  them again.

3       Neither community property law, nor for that matter contract law, protects
4  Defendant from the mandates of the Act.  As Professor Nimmer explains:

5       One question is whether application of state community property laws
6       sufficiently injures the federal purpose regarding the rights of
7       surviving nonauthor-spouses under the Copyright Act so as to justify
8       pre-emption.   The Copyright Act itself addresses the rights of
9       surviving spouses.  [¶] In particular, Congress explicitly provided that
10      as to works published (or registered while unpublished) before
11      January 1, 1978, the renewal term can be claimed in the first instance
12      by the author personally, and then only as a second resort by the
13      "widow, widower, or children of the author, if the author be not
14      living."   Likewise, as to both pre- and post-1978 works, Congress
15      explicitly provided that terminations of any transfer may be effected
16      in the first instance by the author, and only if the author is dead, by
17      the widow or widower, children, and grandchildren.  By negative
18      implication, one can argue, Congress declined to provide further
19      protection to authors' spouses.   Accepting that interpretation, the
20      congressional goal would be subverted by the community property
21      scheme to the extent that it accords right to spouses in the renewal and
22      termination-of-transfer contexts even during the authors' lifetimes,
23      contrary to federal law.  [¶] The foregoing challenge to community
24      property collapses of its own weight.  *Worth's* rationale, as stated
25      above, depends on distinguishing *Hisquierdo*, a case that arose in a
26      context for which Congress had expressly negated co-ownership.
27      According to the California court's analysis, *Worth* does not apply to
28      contexts in which Congress itself has already negated co-ownership.

**MR. ROBINSON'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

1
2
3

> **Thus, given the deference paid to the federal scheme, California apparently would not even purport to extend its community property law to copyright renewals and terminations of transfer.**
>
> Properly circumscribed in this way by California court interpretation, community property presents no live pre-emption problem.

3 Nimmer § 6A.03[C][1] (emphasis added).

Thus, by the foregoing reasoning the Stipulated Judgment, whether based on community property or contract law, conflicts with the intent of Congress to the extent it would give Defendant any benefit from Plaintiff's recaptured copyrights. Accordingly, to the extent the counterclaims are based on the Stipulated Judgment, they are preempted.

## III. CONCLUSION

For the reasons stated above, the Court should dismiss Counterclaims II through VII because: 1) they fail to state a claim for relief; 2) they are not ripe; and 3) they are preempted by the Act.

Dated: July 14, 2014                         FOX ROTHSCHILD LLP

By:  /s/Neal S. Cohen
     Neal S. Cohen
     Patrick J. Hagan
     Attorneys for Plaintiff

**MR. ROBINSON'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**